ANDERSON, C.J., DROWOTA and BIRCH, JJ., and LYLE REID, Special Justice, concur.

STATE of Tennessee, Appellee,

v.

**Gussie Willis VANN, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Sept. 21, 1998.

Rehearing Denied Oct. 19, 1998.

Brock Mehler, Nashville, Ashley L. Ownby, Cleveland (Trial and On Appeal), Kenneth Miller, Cleveland (Trial Only), for Appellant.

John Knox Walkup, Attorney General and Reporter, Michael E. Moore, Solicitor General, John P. Cauley, Assistant Attorney General, Nashville, Jerry N. Estes, District Attorney General, Athens, for Appellee.

## OPINION

DROWOTA, Justice.

In this capital case, the defendant, Gussie Willis Vann, was convicted of first degree felony murder in the perpetration of aggravated rape, and two counts of incest. In the sentencing hearing, the jury found three aggravating circumstances: (1) "[t]he murder was committed against a person less than twelve (12) years of age and the defendant was eighteen (18) years of age or older;" (2) "[t]he defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person;" and (3) "[t]he murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death." Tenn.Code Ann. § 39–13–204(i)(1), (2), and (5) (1991 Repl.). Finding that the three aggravating circumstances outweighed mitigating circumstances beyond a reasonable doubt, the jury sentenced the defendant to death by electrocution.

On direct appeal to the Court of Criminal Appeals, the defendant challenged both his conviction and sentence, raising eleven claims of error, some with numerous subparts. After fully considering the defendant's claims, the Court of Criminal Appeals affirmed the trial court's judgment. Thereafter, pursuant to Tenn.Code Ann. § 39–13–206(a)(1) (1997 Repl.),[1] the case was docketed in this Court.

The defendant raised numerous issues in this Court, but after carefully examining the entire record and the law, including the thorough opinion of the Court of Criminal Appeals and the briefs of the defendant and the State, this Court, on December 15, 1997, entered an Order setting the cause for oral argument at the January 1998, term of Court in Knoxville, and limiting oral argument to eight issues. See Tenn. S.Ct. R. 12.[2]

For the reasons explained below, we have determined that none of the alleged errors affirmatively appear to have affected the verdict of guilt or the sentence imposed. Moreover, the evidence supports the jury's findings as to aggravating and mitigating circumstances, and the sentence of death is not disproportionate or arbitrary. Accordingly, the defendant's convictions for first degree murder and incest[3] and the sentence of death by electrocution are affirmed.

### FACTUAL BACKGROUND

The proof presented by the State at the guilt phase of this trial established that on July 30, 1992, at approximately 11:39 p.m., Bernice Vann, the defendant's wife, made an emergency call to 911. She reported that her eight-year-old daughter, Necia Vann had fallen in the bedroom with a rope around her neck and was not breathing. The paramedics arrived at the scene at 11:54 to find Bernice Vann crying hysterically on the front porch. The defendant was inside the mobile home holding the victim and attempting to perform CPR. Except for a blanket covering

---

1. "Whenever the death penalty is imposed for first degree murder and when the judgment has become final in the trial court, the defendant shall have the right of direct appeal from the trial court to the Court of Criminal Appeals. The affirmance of the conviction and the sentence of death shall be automatically reviewed by the Tennessee Supreme Court. Upon the affirmance by the Court of Criminal Appeals, the clerk shall docket the case in the Supreme Court and the case shall proceed in accordance with the Tennessee Rules of Appellate Procedure."

2. Tennessee Supreme Court Rule 12 provides in pertinent part as follows: "Prior to the setting of oral argument, the Court shall review the record and briefs and consider *all* errors assigned. The Court may enter an order designating those issues it wishes addressed at oral argument."

3. The defendant was sentenced to three years on each count of incest, which are to be consecutive to the death sentence. He does not challenge those sentences in this appeal.

his lap, the defendant was nude. The defendant told the paramedics that he was not sure what had happened, but that earlier in the evening the victim had been eating popcorn. He had left to go to the market, and the unconscious victim had been discovered in her room by his wife shortly after his return. He said the victim possibly had choked on popcorn.

The victim, clothed only in panties, had no vital signs when the paramedics arrived on the scene. Despite their efforts to revive her, the victim was pronounced dead upon her arrival at the hospital. Dr. Robert L. Martin, the attending emergency room physician, performed a post-mortem examination of the victim's body, which paramedic Robert West observed. The victim's panties were removed and a broken gold necklace fell onto the examination table. Both West and Dr. Martin observed bruises on the victim's neck and a slight tear at the opening of her vagina. West testified that he observed a small trace of blood near the tear. Both West and Dr. Martin described the victim's anus as extremely dilated, with no muscle tone, indicating multiple episodes of anal penetration over a prolonged period of time. Dr. Martin testified that in his prior fifteen years practicing obstetrics and gynecology, he had never seen the anus of a female child in such a condition. Dr. Martin testified that he did not discover a "hangman's fracture" on the victim's neck, indicating the victim had been strangled rather than hanged. Dr. Martin described Bernice Vann as visibly upset, and the defendant as "totally nonchalant" when informed of their daughter's death. When asked by Dr. Martin what had happened, the defendant replied that he had gone out for cigarettes and did not know. Photographs of the victim's vaginal and anal openings were admitted into evidence.

Also admitted into evidence was a statement given by the defendant to Tennessee Bureau of Investigation Agent Richard Brogan in which the defendant said that from about 4:30 p.m. on the afternoon of July 30, he, his wife, and their four children (including the victim) had watched videotaped movies on their television. They had eaten pop-

corn as they watched the movies. Later in the evening the victim had gone into her bedroom. The defendant had gone to a local convenience store and purchased cigarettes and two pieces of "Chico" candy. Upon returning home, he undressed to take a shower and then heard his wife screaming from the other room. He ran into the hallway and saw his wife carrying the victim in her arms. After taking the victim into his arms and determining that she was not breathing, the defendant told his wife to go to a neighbor's house to call 911.[4] The defendant began performing CPR on the victim. Shortly thereafter, Bernice Vann returned to the residence, along with a neighbor. Bernice Vann obtained a blanket for the defendant since he had not been able to dress before beginning CPR on the victim. The defendant said he had ridden in the front of the ambulance on the way to the hospital and did not ask his wife what had happened until they arrived at the hospital. According to the defendant, Bernice Vann said she had found the victim sitting beside her dresser with a rope tied around her neck. The defendant said the victim had never given him any indication that she wanted to hang herself. The defendant also volunteered information to police that the victim often spent the night with an uncle, a male friend of his, and a person named Linda Rogers, with whom he had been having an affair.

Ruby Crittenden, clerk at the "Mr. Zip" convenience store where the defendant purportedly purchased cigarettes and candy on the night of the murder testified that she did not recall whether or not the defendant had come into the store that evening. Cash register tapes for the time the defendant claimed to have been at the store did not reflect a purchase of the items he claimed to have bought.

Jerry Tate, a criminal investigator with the McMinn County Sheriff's Department, testified that he had been dispatched to the emergency room to investigate the purported suicide of the eight-year-old victim in this case. Upon viewing her body, Tate noticed red marks around her neck, her severely enlarged anus, the tear at the opening of her

4. The Vann family did not have a telephone in their home.

vagina, and blood near the victim's vaginal opening. As a result of his observations, Tate asked Dr. Martin to obtain rape kit samples from the victim's body. Tate then obtained verbal consent from Bernice Vann and the defendant to visit their home and investigate the victim's death. Tate described the mobile home as dirty and unsanitary. Upon inspection, he found a strip of bed sheet tied to a knob on a drawer of a dresser in the victim's bedroom. Tate noticed that the knot was very tight, signifying that perhaps an adult, rather than a child, had tied the knot. Tate found another sheet with a portion torn from it in a back bedroom. Tate seized as evidence the two torn sheets, the sheets from the victim's bed, and some of the victim's clothing. Approximately two weeks later, after the defendant and Bernice Vann had been arrested for the murder, rape, and incest of Necia Vann,[5] Tate obtained a warrant to search the Vann residence. During the ensuing search, a pornographic videotape, various pornographic magazines, unopened packages of condoms, a partially used jar of petroleum jelly, a rope tied into a noose, and the victim's dresser were seized. These items, along with the rape kit samples from the victim, the items seized in the consent search, samples of blood, saliva, pubic hair, head hair, and a penile swab obtained from the defendant's person the morning after the victim's death, and similar samples obtained from Bernice Vann during the two weeks preceding the arrest, were submitted to the Tennessee Bureau of Investigation (T.B.I.) for testing and analysis.

Linda Littlejohns, a T.B.I crime laboratory expert in the trace evidence section, testified that she had conducted a physical comparison of the torn bed sheet found in the victim's bedroom and the portion of sheet found in the back bedroom. According to her analysis, the parts had at one time been joined. She found no trace evidence on the torn sheet or on the anal swab taken from the victim, however, which related to the partially used container of petroleum jelly or unopened condoms found in the defendant's residence.

Raymond Depriest, a T.B.I. expert in serology, testified that his analysis of a pair of jeans and a t-shirt believed to have been worn by the victim on the day of the murder, a blue and white jumper, the victim's underwear, two packages of condoms taken from the defendant's home, and an anal swab taken from the victim all proved negative for the presence of sperm, saliva, or blood. However, his analysis of sheets taken from the victim's bed revealed the presence of semen stains which were consistent with the blood, saliva, and semen samples taken from the defendant.

Chester Blythe, an expert in hair and fiber comparisons from the Federal Bureau of Investigation, (F.B.I.) Forensic Science Training Unit testified that he had compared the hair samples taken from the victim and Bernice Vann to hair debris from the rope seized from the defendant's residence and believed to have been used to strangle the victim. Blythe concluded that the hair debris from the rope matched the samples taken from the victim and Bernice Vann. He also found hairs that were microscopically similar to the hairs of the victim on the torn piece of sheet taken from the residence. A number of hairs on the bed sheet were microscopically unlike the hair samples taken from the victim or Bernice Vann. Examination of these hairs revealed that they came from an adult. Because the envelope labeled as containing the defendant's hair samples had been empty when he opened it, Blythe had been unable to compare the recovered hair evidence to samples of the defendant's hair.

John Mertens, an F.B.I. agent specializing in DNA analysis testified that the DNA profiles of the semen stains found on the victim's bed sheet matched the DNA profile of the defendant. The odds of finding another individual whose DNA profile matched that of the semen stains found on the sheet are one in ten thousand.

---

**5.** Upon motion of Bernice Vann, the trials were severed. The defendant's trial was held first. Bernice Vann later pled guilty to accessory after the fact to felony murder, facilitation to commit aggravated rape, and aggravated child abuse and neglect. She received a total effective sentence of twenty-five years.

The medical examiner for McMinn County, Dr. William Foree, Jr., testified that he examined the victim's body at approximately 5:30 a.m. on July 31, 1992. Dr. Foree said he observed blood both in the victim's vaginal and anal areas. He also observed a laceration in the vaginal area, a contusion on her forehead, and abrasions on her lower extremities. He noted signs of asphyxiation, and based upon the angle of depression on the victim's neck, concluded that the cause of death had been strangulation rather than hanging. Due to the markings on the victim's neck, he further concluded that the strangulation had been accomplished from behind the victim.

Dr. Ronald Toolsie, a pathologist at Bradley Medical Center, performed the autopsy and agreed with Dr. Foree that the cause of death had been strangulation. According to Dr. Toolsie, the quarter-inch depression in the victim's neck indicated ligature strangulation consistent with the rope found in the defendant's home. Torn muscles in the victim's neck indicated that considerable force had been applied to strangle the victim. Dr. Toolsie also had found evidence of repeated sexual abuse. Based on his observation of a tear to the victim's vaginal opening and fresh bruising on the inside of her vaginal wall, Dr. Toolsie concluded that the most recent abuse had occurred around the time of death. Dr. Toolsie said the victim's anus had been dilated three or four times larger than normal, indicating she had suffered repeated anal penetration over some period of time. Because of the marked lack of anal muscle tone, Dr. Toolsie said that anal penetration could have been accomplished at the time of death even though there was no evident injury to the victim. Dr. Toolsie said the victim's hymen had been intact, but stated that penetration with something other than a penis could have occurred without breaking the hymen. Dr. Toolsie also noted that the victim had a one inch contusion on her scalp "of very recent time duration," and a one quarter inch cut inside her mouth. Finally, Dr. Toolsie testified that he had found no material resembling popcorn in the victim's stomach.

The defendant's neighbor, Troy Lee Jones, testified that he had assisted Bernice Vann call 911 on the night of the murder. Jones said that when he arrived at the Vann residence, the defendant, in his opinion, had been doing everything within his power to save the victim's life. Jones said that Bernice Vann had told him that the victim had been eating popcorn and might have choked on it. Jones also stated on cross-examination that Bernice Vann had been hysterical and had said something about the victim hanging herself.

At the close of the proof, the State dismissed the charge of premeditated murder and the case was submitted to the jury on the charges of first degree felony murder and two counts of incest. The jury found the defendant guilty of felony murder, one count of incest by vaginal penetration, and one count of incest by anal penetration.

At the sentencing phase of the trial, the State produced the birth certificates of both the defendant and the victim to establish that the murder had been committed against a person less than twelve (12) years of age and the defendant was eighteen (18) years of age or older. The State also introduced copies of two prior judgments dated January 6, 1994. These judgments reflected that the defendant had been previously convicted of two counts of aggravated rape. Finally, the State relied upon the medical proof introduced at the guilt phase of the trial to establish that the murder had been especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death.

Testifying in his own behalf, the defendant stated that he had been one of fifteen children. His family had farmed the land of others and had been poor, but loving. From the age of ten, the defendant had farmed the land. When his oldest brother left home, the defendant assumed the responsibility of caring for his younger siblings. As an adult, the defendant had worked in a carpet mill and as a truck driver. In 1980 he had been injured on the job at the carpet mill and placed on prescription pain medication. He had become addicted to the medication, and as a result, had a nervous breakdown, and had to be hospitalized. In 1982, the defendant mar-

ried Bernice Vann. After the victim had been born, according to the defendant, Bernice "went to pieces," so he took over the responsibilities for all the household chores and child care. In 1989 the defendant had sustained severe injuries in an attempted truck hijacking. He had been beaten in the head with a tire iron, causing head injuries and a dislocated disk in his back. As a result of the injuries, he suffers recurrent seizures. The defendant denied killing the victim or knowing how, or at whose hands, she had died. He also denied sexually abusing the victim.

The defendant's brother, Eston Allen Gene Vann, testified that the defendant and his father did not have a harmonious relationship, that the defendant had not been "wanted," and that their father often had beaten the defendant with a broom handle. He also testified that the defendant had been the primary caretaker of his children, who all appeared to love the defendant, particularly the victim.

Lisa Marie McMahan, the defendant's sister testified that the defendant had provided food and support to his siblings. McMahan expressed her belief that the defendant definitely had not committed the crimes of which he had been convicted. Finally, the defense introduced medical records concerning the defendant's hospitalization and treatment for depression and suicidal tendencies.

Based upon the proof presented, the jury determined that the State had proven the existence of three aggravating circumstances beyond a reasonable doubt: (1) "[t]he murder was committed against a person less than twelve (12) years of age and the defendant was eighteen (18) years of age or older;" (2) "[t]he defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person;" and (3) "[t]he murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death." Tenn.Code Ann. § 39–13–204(i)(1), (2), and (5) (1991 Repl.). Finding that the three aggravating circumstances outweighed mitigating circumstances beyond a reasonable doubt, the jury sentenced the

defendant to death by electrocution. The trial court entered a judgment in accordance with the jury's verdict and the Court of Criminal Appeals affirmed. After reviewing the record and considering the errors assigned by the defendant, we affirm the judgment of the trial court and Court of Criminal Appeals.

### JURY INSTRUCTIONS ON OTHER OFFENSES

■ The defendant asserts that the trial court's failure to instruct the jury on any degree of homicide other than first degree felony murder deprived him of his state and federal constitutional rights to trial by jury, due process, and heightened reliability required in capital cases. The defendant asserts that under the proof in this case the jury should have been given an instruction on the offense of second degree murder. He also asserts that the jury could have concluded from the proof that Bernice Vann, rather than the defendant, actually had committed the murder, and that the defendant had merely furnished substantial assistance in the commission of the felony. Accordingly, he contends that the jury should have been given an instruction on the offense of facilitation of a felony. The State responds that the evidence in this case did not warrant an instruction on either offense.

In this case, the indictment charged the defendant in count one with premeditated first degree murder, and in count two with first degree murder during the perpetration of rape. Before the case was submitted to the jury for decision, the State dismissed count one, premeditated murder, and proceeded on the theory of first degree felony murder. The trial court then instructed the jury solely on the offense of first degree felony murder.

Reviewing the evidence in this record, we agree with the Court of Criminal Appeals that the trial court did not err in failing to give a jury instruction on second degree murder and facilitation of a felony. The evidence in this record establishes that the victim had been killed during the perpetration of a rape, or that the victim had died from an accidental choking on popcorn, or

that the victim had committed suicide. The record in this case is devoid of evidence to support a jury charge on the offenses of second degree murder and facilitation of a felony. *State v. Boyd,* 797 S.W.2d 589, 593 (Tenn.1990); *State v. King,* 718 S.W.2d 241, 245 (Tenn.1986). Therefore, failure to instruct the jury on these offenses was not error.

### JURY INSTRUCTIONS

■ The defendant next contends that the trial court's instruction as to proximate cause relieved the prosecution of its burden of proving criminal intent, deprived him of his right to a unanimous jury verdict, and shifted the burden of proof to the defendant. The State concedes that the instructions complained of should not have been given in this case because the issue of proximate cause had not been raised by the proof. The State argues, however, that the error is harmless because the instructions given were correct statements of the law and, considered as a whole, the jury instructions were not misleading, contradictory, or confusing.

■ We have recently stated that, in determining whether jury instructions are erroneous, this Court must review the charge in its entirety and read it as a whole. *State v. Hodges,* 944 S.W.2d 346, 352 (Tenn.1997); *State v. Stephenson,* 878 S.W.2d 530, 555 (Tenn.1994). The United States Supreme Court has observed that in evaluating claims of error in jury instructions, courts must remember that

> [j]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions ·may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Boyde v. California,* 494 U.S. 370, 380–81, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990); *see also State v. Van Tran,* 864 S.W.2d 465, 479 (Tenn.1993). A charge should be considered prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law. *State v. Forbes,* 918 S.W.2d 431, 447 (Tenn.Crim.App. 1995); *Graham v. State,* 547 S.W.2d 531 (Tenn.1977). Applying that standard to the instructions in this case, we have determined that the instruction did not mislead or confuse the jury as to the applicable law.

The instruction challenged as error by the defendant is as follows:

> Before the Defendant can be convicted of any degree of homicide, the State must have proven beyond a reasonable doubt that the death of the deceased, Necia Vann, was brought about as a result of the criminal agency of the Defendant; that is, that the death of the deceased was due to the unlawful act of the Defendant.

> One who unlawfully inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause.

> To convict the Defendant, it is not necessary that his act or failure to act be the sole cause, nor the most immediate cause of death. It is only necessary that the Defendant unlawfully contributed to the death of the deceased.

> Death following a wound from which death might ensue, inflicted with intent to kill, is presumed to have been caused by such wound, and the burden of proceeding by offer of proof is upon the Defendant to show that death resulted from some other cause not attributable to the Defendant. However, while the burden of proceeding may shift, the burden of proof never shifts and is always upon the State to prove beyond a reasonable doubt that the death of the deceased was brought about by the unlawful act of the Defendant.

> If you find the Defendant's acts, if any, did not unlawfully cause or contribute to the death of the deceased, or if you have a reasonable doubt as to this proposition, then you must acquit him.

Though we agree with the defendant that the evidence in this case did not warrant giving the proximate cause instruction, we do not agree that the instruction relieved the

prosecution of its burden of proving criminal intent, deprived him of his right to a unanimous jury verdict, and shifted the burden of proof to the defendant. The instruction clearly did not shift the burden of proof to the defendant. In fact, the instruction informed the jury that "the burden of proof never shifts and is always upon the State to prove beyond a reasonable doubt that the death of the deceased was brought about by the unlawful act of the Defendant." Moreover, there is nothing in the instruction which would have deprived the defendant of his right to a unanimous verdict. In fact, the trial court specifically instructed the jury that "[t]he verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous, that is, twelve votes for a verdict finding guilty or twelve votes for a verdict finding not guilty." Finally, with respect to the defendant's argument that the instruction relieved the State of the burden of proving intent, we disagree. The trial court correctly instructed the jury as follows on the elements of felony murder:

> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> (1) that the defendant unlawfully killed the alleged victim; and
>
> (2) that the killing was committed in the perpetration of or attempt to perpetrate the alleged rape; that is, that the killing was closely connected to the alleged rape and was not a separate, distinct and independent event; and
>
> *(3) that the defendant intended to commit the alleged rape; and*
>
> *(4) that the killing was the result of a reckless act by the defendant.*

(Emphasis added). Clearly, the charge, read as a whole correctly informed the jury of the intent required. For the previously explained reasons, we conclude that the jury instructions read as a whole were not prejudicially erroneous; therefore, this issue is without merit.

## OTHER CRIMES EVIDENCE

The defendant next contends that the trial court erred by admitting the photographs and the testimony concerning past sexual abuse because it is irrelevant and excluded by Tenn. R. Evid. 404(b). Alternatively, the defendant asserts the trial court erred by admitting the evidence because its minimal probative value was outweighed by its prejudicial effect.

The State responds that the photograph was highly relevant to prove that anal penetration could have occurred at the time of the murder with no evident injury to the victim because the anal muscle tone had been destroyed by prior and repeated episodes of anal penetration. We agree.

Tennessee Rule of Evidence 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

In determining whether evidence of other crimes has been erroneously admitted, we review the record of the jury-out hearing to determine if the trial court abused its discretion. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn.1997)(standard of appellate review is abuse of discretion where trial court has substantially complied with the procedural requirements of Rule 404(b)). Similarly, under Tennessee Rule of Evidence 403 and previous decisions of this Court, a photograph is admissible if it is relevant to an issue in dispute and if its probative value is not outweighed by its prejudicial effect.

*State v. Stephenson,* 878 S.W.2d 530, 542 (Tenn.1994); *State v. Banks,* 564 S.W.2d 947, 951 (Tenn.1978). The decision of a trial judge to admit a photograph into evidence will not be overturned on appeal absent a clear showing of an abuse of discretion. *Id.*

In this case, the State sought to prove that the defendant murdered the victim during the course of a rape, and that he committed incest by vaginal and anal penetration. The emergency room physician testified that he found no apparent fresh injuries to the victim's anal area, but described the condition of her anus as consistent with ongoing repeated anal penetration. Dr. Toolsie, the pathologist who performed the autopsy, testified that because of the condition of the victim's anus, penetration at the time of death could have occurred without a resulting evident injury. Dr. Toolsie, and Dr. Foree, the medical examiner, both testified that the victim had fresh injuries to her vaginal region indicative of penetration at the time of death. Photographs of the victim's anal and vaginal regions were introduced into evidence.

The record reflects that at the end of the jury-out hearing to determine admissibility of the photographs, the trial court stated, "I find the probative value outweighs the prejudicial effect, and do not deny prejudicial effect." The defendant asserts that since the trial judge recognized the prejudicial effect, the photographs should not have been admitted. The defendant's argument fails to recognize that most evidence introduced during the trial of any lawsuit, criminal or civil, has a prejudicial impact on the position of one party to the lawsuit. In determining whether exclusion is required by Rule 404(b), the issue is not whether the evidence is prejudicial, but whether it is *unfairly prejudicial.* *DuBose,* 953 S.W.2d at 655. This Court has emphasized that "unfair prejudice" is "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *DuBose,* 953 S.W.2d at 654, quoting *Banks,* 564 S.W.2d at 951.

■ The probative value of the evidence challenged by the defendant in this case was not outweighed by the danger of unfair prejudice, and it did not have a tendency to suggest a decision on an improper or unfair basis. Instead the photographs and testimony regarding prior sexual abuse were necessary to support the State's position that the victim had been raped vaginally and anally at the time of the murder. They were necessary to explain that the victim could have been penetrated anally at the time of the murder without sustaining an evident injury. *Compare DuBose,* 953 S.W.2d at 654–55 (evidence relevant and admissible to show cause of death, intent, and lack of accident). Though the photographs are graphic, they are relevant to depict the testimony regarding the injuries in this case, and the consequences of prior sexual abuse. Accordingly, the defendant has failed to show the trial court abused its discretion in admitting this evidence.

■ The defendant also alleges that the trial court erred by admitting into evidence the testimony of Detective Tate enumerating items seized from the defendant's residence, including a half-empty jar of petroleum jelly, a pornographic videotape, pornographic magazines, and unused condoms. The defendant asserts that the testimony regarding the items portrayed him as a sexual deviant and resulted in prejudice. While conceding that the testimony was irrelevant, the State argues that the error is harmless because it does not affirmatively appear to have affected the verdict. We agree.

A review of the record reveals that the State did not elicit the testimony of Detective Tate characterizing the videotape and magazine as pornographic and relating the title of the videotape. Instead, the State attempted to end Detective Tate's narrative and steer him down a different path. Neither the tapes nor the magazines were presented to the jury, and the investigator related no information to the jury regarding the contents of the videotape and magazines. Though this information was not relevant and should not have been admitted, we agree with the Court of Criminal Appeals that the error is harmless. Tenn. R.Crim. P. 52(a).

### AGGRAVATING CIRCUMSTANCE (i)(5)

The defendant next asserts that the evidence is not sufficient to support application

of the aggravating circumstance set out in Tenn.Code Ann. § 39–13–204(i)(5) (1991), "[t]he murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death." The defendant also argues that the prosecution engaged in misconduct by urging the jury to find the aggravating circumstance based on the "repeated, repeated, repeated anal abuse of this child." He contends that only abuse of the victim which occurred in temporal proximity to the killing, is relevant to prove the aggravating circumstance.

■ Pointing out the number of injuries observed on Necia Vann's body, the State argues that the evidence clearly establishes that the victim had been subjected to serious physical abuse contemporaneous with her death. The State also argues that the evidence shows torture because the rape and abuse of the victim by her father would have resulted in mental and physical pain. As to the alleged prosecutorial misconduct, the State argues that the prosecutor's argument, considered as a whole, was not erroneous.

In *State v. Williams*, 690 S.W.2d 517 (Tenn.1985), we defined "torture" as the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious. *Id.* at 529. With respect to "serious physical abuse beyond that necessary to produce death," we stated in *State v. Odom*, 928 S.W.2d 18 (Tenn.1996), that "serious" alludes to a matter of degree, and that the physical abuse must be "beyond that" or more than what is "necessary to produce death." *Id.* at 26. The proof in this case established that the victim suffered multiple injuries during the course of her murder. She had been raped not once, but twice, both anally and vaginally. Witnesses observed blood in both her vaginal and anal regions. She had sustained a tear to her vaginal opening, bruising in the vaginal region, and a contusion on her head which was one inch in diameter. In addition, the victim was strangled with such force that the muscles in her neck were literally torn. The pathologist described the resiliency of muscle tissue and stated that tearing, such as that present in this case, results only from the application of

substantial force. He described the strangulation in this case as "violent." Based upon this proof, we conclude that the evidence is sufficient to establish that the murder was especially heinous, atrocious, or cruel in that it involved serious physical abuse beyond that necessary to produce death. Moreover, the evidence is sufficient to establish torture. The victim in this case was murdered by her own father, as he perpetrated anal and vaginal rape upon her. Certainly these facts are sufficient to establish that the victim suffered severe mental pain.

■ We also disagree with the defendant's claim that the prosecutor's argument was improper. That portion of the prosecutor's argument complained of is follows:

> The third is that the murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death. You have also received evidence of that in this trial. This is the evidence you have received, these neck injuries, of what was necessary to produce death. You have also received into evidence other injuries that go beyond that necessary to produce death. These are just a few: the doctors have testified, the pathologist and others testified, there is the contusion to the head, there is the injury to the vaginal area that was probably under the evidence you heard contemporaneous or close to death, but there was repeated, repeated, repeated anal abuse of this child. There were fading injuries that have been testified too [sic]. There was a cut lip. All of this is evidence that at this point in this trial stands uncontradicted as to these injuries, and they were beyond that necessary to produce death.

We do not view the prosecutor's argument, taken as a whole, to imply that past injuries are proof that the victim sustained serious physical injury beyond that necessary to produce death. The argument addressed the victim's injuries in a general sense. The reference to past anal and physical abuse arose as the prosecutor was summarizing the testimony. This isolated reference though technically improper, is not error which could

be deemed to have affected the verdict. This issue is without merit.

## MOTION TO SUPPRESS

■ The defendant next contends that the trial court should have suppressed evidence about items seized from his home pursuant to a defective search warrant. The defendant says that the affidavit in support of the search warrant failed to allege a nexus between the crime and the place to be searched and failed to allege a time frame during which the facts in question occurred. Thus, the defendant argues, the affidavit fails to establish probable cause and the evidence seized pursuant to it should have been suppressed. The State responds that the information alleged to be missing is, in fact, in the affidavit attached to the search warrant.

In *State v. Longstreet,* 619 S.W.2d 97, 99 (Tenn.1981), this Court held that to establish probable cause an affidavit must set forth facts from which a reasonable conclusion may be drawn that the evidence will be found in the place to be searched pursuant to the warrant. *Id.* Likewise, the affidavit must contain information which will allow a magistrate to determine whether the facts are too stale to establish probable cause at the time issuance of the warrant is sought. *Id.*; *see also Welchance v. State,* 173 Tenn. 26, 114 S.W.2d 781 (1938). *State v. McCormick,* 584 S.W.2d 821, 824 (Tenn.Crim.App.1979).

Applying those rules to the facts of this case, we conclude that the Court of Criminal Appeals properly affirmed the trial court's judgment denying the defendant's motion to suppress. Approximately two weeks after the murder, a warrant to search the Vann residence issued. Several items seized pursuant to the warrant were admitted into evidence at trial. The affidavit in support of the warrant stated that the victim had been chronically sexually abused anally and vaginally; that the pathologist who examined the victim had determined that sexual penetration of the victim had occurred within forty-eight hours of death; that another child had provided a sworn statement that Bernice Vann had solicited her to have sexual relations with the defendant, and when the child refused, Bernice Vann had procured a vi-

brator from the bathroom and solicited the child to use the vibrator; that the defendant had told several people that no semen would be found on the victim, indicating condoms may have been used to perpetrate the abuse; and that Bernice Vann had told authorities the victim was found with a rope around her neck, thus necessitating a search for the rope or another object that served as the murder weapon. Furthermore, the affidavit stated that "[t]he mobile home of Gussie Willis Vann and Bernice Vann is equipped with a satellite dish which provides access" to adult television programming. The affidavit referred to the premises as the "death scene," and stated that photographs of the "death scene" had shown videotapes which appeared to have been non-commercially copied, an open jar of vaseline, and a booklet titled "How to Help Your Kids Say No To Sex." With respect to the time frame during which the facts in question had occurred, the affidavit stated that within the previous five days the affiant and another officer had observed the certain enumerated items related to sexual abuse and bondage in the named premises.

In our view, the trial court correctly found that the affidavit sets forth sufficient facts from which the magistrate reasonably could have concluded both that a nexus existed between the crime and the place to be searched, and that the facts were sufficiently recent to establish probable cause *See Hicks v. State,* 194 Tenn. 351, 250 S.W.2d 559 (1952); *Waggener v. McCanless,* 183 Tenn. 258, 191 S.W.2d 551 (Tenn.1946); *State v. McCormick,* 584 S.W.2d 821 (Tenn.Crim.App. 1979). The defendant's assertion that the evidence should have been suppressed is without merit.

## MENS REA—INCEST

■ The defendant next argues that the indictment charging him with two counts of incest did not allege the proper *mens rea* and is therefore void. We disagree. Recently, in *State v. Hill,* 954 S.W.2d 725 (Tenn.1997), we held that for offenses which neither expressly require, nor plainly dispense with a culpable mental state, an indictment which fails to specifically allege a mental state will be suffi-

cient so long as the mental state required can be logically inferred from the allegations in the indictment so as to satisfy constitutional and statutory requirements of notice and form. *Id.* at 727.

 The offense of incest is defined by Tenn.Code Ann. § 39–15–302 (1991 Repl) as follows:

(a) A person commits incest who engages in sexual penetration as defined in § 39–13–501, with a person he or she knows to be, without regard to legitimacy:

(1) The person's natural parent, child, grandparent, grandchild, uncle, aunt, nephew, niece, stepparent, stepchild, adoptive parent, adoptive child; or

(2) The person's brother or sister of the whole or half-blood or by adoption.

(b) Incest is a Class C felony.

With respect to commission of the offense, the definition of incest does not expressly require, nor plainly dispense with a culpable mental state.[6] Accordingly, intent, knowledge, or recklessness will suffice to establish the culpable mental state for commission of the offense. Tenn.Code Ann. § 39–11–301(c) (1991 Repl). Therefore, under our recent decision in *Hill,* if any one of those three culpable mental states can be logically inferred from the allegations in the indictment, the defendant's argument must fail. *Id.* at 727.

The indictment at issue in this case charged the following:

GUSSIE WILLIS VANN AND BERN-ICE ANN VANN on or about the 30th day of July, 1992, in McMinn County, Tennessee, and before the finding of this indictment did unlawfully engage in sexual penetration of the vaginal opening as defined in T.C.A. 39–13–501, of Necia Vann, a person the said Defendants know to be their daughter, in violation of T.C.A. 39–15–302, all of which is against the peace and dignity of the State of Tennessee.

\* \* \* \*

On or about the 30th day of July, 1992, in McMinn County, Tennessee, and before the finding of this indictment did unlawfully engage in sexual penetration of the anal opening as defined in T.C.A. 39–23–501, of Necia Vann, a person the said Defendants know to be their daughter, in violation of T.C.A. 39–15–302, all of which is against the peace and dignity of the State of Tennessee.

We agree with the Court of Criminal Appeals that the *mens rea* of "knowingly" can be logically inferred from the language of the indictment. The nature of the criminal conduct alleged, sexual penetration, and the phrase, "know[n] to be their daughter," gives rise to the inference. The defendant's claim that the indictment is void is without merit.

### PROPORTIONALITY REVIEW

 Finally, we consider whether the defendant's sentence of death is comparatively disproportionate considering the nature of the crime and the defendant. We begin, as always, with the proposition that the sentence of death is proportional to the crime of first-degree murder. *State v. Bland,* 958 S.W.2d 651 (Tenn.1997). If this case is "plainly lacking in circumstances consistent with those in similar cases in which the death penalty has previously been imposed," the sentence of death is disproportionate. *Id.* at 665. However, a sentence of death is not disproportionate merely because the circumstances of the offense are similar to those of another offense for which the defendant has received a life sentence. *Id.* Our role, in conducting proportionality review is not to assure that a sentence "less than death was never imposed in a case with similar characteristics." *Id.* Instead, our duty "is to assure that no aberrant death sentence is affirmed." *Id.*

 In performing this duty, we do not utilize a mathematical formula or scientific grid. The test is not rigid. *Id.* In choosing and comparing similar cases, we consider many variables, some of which include, (1)

---

**6.** However, the definition of the offense specifically requires that the perpetrator have knowledge of the familial relationship between himself or herself and the victim. In this case, the indictment contains a specific allegation of the knowledge requirement.

the means of death; (2) the manner of death; (3) the motivation for the killing; (4) the place of death; (5) the similarity of the victim's circumstances, including age, physical and mental conditions, and the victims' treatment during the killing; (6) the absence or presence of premeditation; (7) the absence or presence of provocation; (8) the absence or presence of justification; and (9) the injury to and effects on nondecedent victims. *Id.* at 667. When reviewing the characteristics of the defendant, we consider: (1) the defendant's prior record or prior criminal activity; (2) the defendant's age, race, and gender; (3) the defendant's mental, emotional or physical condition; (4) the defendant's involvement or role in the murder; (5) the defendant's cooperation with authorities; (6) the defendant's remorse; (7) the defendant's knowledge of the helplessness of the victim; and (8) the defendant's capacity for rehabilitation. *Id.*

■ Applying these factors, we note that the proof reflects that the helpless, eight-year-old victim was strangled to death by her own father. The strangulation was violent, which is evidenced by the torn muscles in the victim's neck. There is no apparent motive for the killing. It is simply a senseless murder perpetrated by the defendant while he anally and vaginally raped his own daughter. The victim was murdered in her own home, the place in which citizens of our society ordinarily feel most secure. There is certainly no proof that the killing was provoked or justified. The defendant had a criminal record. He had been previously convicted of two counts of aggravated rape. There is no proof that the defendant suffered any mental or emotional defect at the time the crime was committed, although he had apparently been addicted to prescription drugs in the past. There is also no proof that the defendant was intoxicated at the time of the killing. In fact, the State introduced evidence to show that the blood samples taken from the defendant on the morning after the murder indicated that he had no alcohol or drugs in his system. According to the proof in this trial, the defendant was completely involved in the offense and was the actual perpetrator of the offense of murder during the course of rape. Witnesses testified that he showed little emotion at the hospital after the victim's death, though a witness for the defense testified that when he arrived at the Vann home, the defendant was doing everything he could to revive the victim. When the defendant testified during penalty phase of the trial of this case, he showed no remorse. The defendant cooperated with the authorities to a certain extent, by giving them verbal consent to search his residence on the morning after the murder, but, when his alibi was refuted, he did not offer any other insight on the events of the evening of the murder. There is nothing in the record to indicate the defendant's capacity for rehabilitation. Finally, the defendant had particular knowledge of the helplessness of the victim because he is her father. Considering the nature of the crime and the defendant, we conclude that imposition of the death penalty for the cruel killing of this young child is not disproportionate to the penalty imposed in similar cases, and that this murder places Vann into the class of defendants for whom the death penalty is an appropriate punishment.

In conducting our review, we have discovered only a few cases in which a jury imposed a sentence less than death for a factually similar murder. In *State v. James Lloyd Julian*, No. 03C01–9511–CR–00371, 1997 WL 412539 (Tenn.Crim.App., at Knoxville, July 24, 1997), the defendant kidnapped the three-year-old daughter of an acquaintance. He drove to a remote area of Tellico Lake, and after swimming for a time, undressed the victim and attempted penile penetration of her vagina, but was unable to do so. He then anally raped the victim, and when she began to scream and cry loudly, he attempted to muffle her screams with his right hand. When he was unsuccessful, he grabbed her neck and choked the victim to death. After cleaning himself and the victim in the lake, he tossed her naked body into the surrounding underbrush. Forensic examinations of the victim's body revealed bruising and soft tissue injury consistent with strangulation, as well as bruising on her forehead, knees, and back. Swelling and severe tissue damage to the vaginal and anal openings was also evident, and semen was found in the victim's mouth, vagina, and anus. Based upon the proof, the defendant

was convicted by a jury of first degree felony murder. The State sought the death penalty, and at the sentencing phase, the jury found two aggravating circumstances: (1) that the victim was less than twelve (12) years of age and the defendant was over eighteen (18); and (2) that the murder was especially heinous, atrocious and cruel in that it involved torture or serious physical abuse beyond that necessary to produce death. Tenn.Code Ann. § 39–13–204(i)(1) and (5) (1997 Repl.). However, the jury determined that the aggravating circumstances did not outweigh the mitigating circumstances and sentenced the defendant to imprisonment for life without the possibility of parole. Tenn. Code Ann. § 39–13–204(f)(2) (1997 Repl.).[7] The mitigation proof showed that the twenty-three-year-old single male defendant had a longstanding history of drug and alcohol abuse. He had some history of criminal behavior, primarily drug possession and driving under the influence offenses. He had been sexually abused as a child by his maternal grandfather and his mother had been an alcoholic. His parents were divorced and the defendant had an unstable family history. He had emotional problems and had been diagnosed with depressive disorder and a mixed personality disorder with borderline features. The defendant said he had smoked marijuana and consumed a fifth of bourbon in the hours before the murder. The defendant had turned himself into the police for committing the offense.

Though the means and manner of death in this case are quite similar to the murder in *State v. Julian,* other differences are apparent and striking. Unlike this case, the jury in *Julian* did not find that the defendant had been previously convicted of a violent felony offense. Moreover, substantial mitigation proof was introduced regarding Julian's mental and emotional condition, his abusive and unstable family background, and his drug and alcohol addiction, including proof that he was under the influence of drugs and alcohol at the time of the killing. In this case, little proof in mitigation was offered, and proof was offered to show that the defendant was not under the influence of drugs and alcohol

when the offense was committed. Julian cooperated with the authorities by turning himself into the police. In fact, he returned from a work trip to Chattanooga by renting a car when he was informed by his mother that the police were looking for him. In this case, the defendant cooperated little with the authorities. While Julian was acquainted with the victim, he was not related to her. In this case, the defendant perpetrated the crime upon his own daughter.

In *State v. Paul William Ware,* a Hamilton County case, the twenty-four-year-old defendant was convicted of first degree murder for killing a four-year-old female child. She died of asphyxiation. The victim had been anally and vaginally raped, as in this case. She sustained abrasions to the vaginal and anal areas of her body. The murder occurred, as in this case, in the victim's home, where the defendant was visiting the roommate of the victim's mother. The jury found two aggravating circumstances: (1) that the victim was less than twelve (12) years of age and the defendant was over eighteen (18); and (2) that the murder was especially heinous, atrocious and cruel in that it involved torture or serious physical abuse beyond that necessary to produce death. Tenn.Code Ann. § 39–13–204(i)(1) and (5) (1997 Repl.). However, the jury determined that the aggravating circumstances did not outweigh the mitigating circumstances and sentenced the defendant to imprisonment for life without the possibility of parole. Tenn.Code Ann. § 39–13–204(f)(2) (1997 Repl.). Again, unlike this case, substantial mitigation proof was introduced regarding Ware's family background, including a history of abuse and instability, his mental, emotional, and psychological history, his history of alcohol and drug related problems, his prior good conduct and lack of a prior record of violent felonies, and finally, his conduct since the offense, including efforts at rehabilitation and feelings of remorse and regret. Proof was also introduced to show that Ware was under the influence of an intoxicant or drug at the time the offense was committed. Also, while acquainted with the victim, Ware was not

---

7. The trial judge commented on the Rule 12
report that the sentence should have been death.

related to her unlike the defendant in this case.

Finally, in *State v. John Edward Allen,* a Shelby County case, the seventeen-year-old defendant was convicted of first degree murder for the ligature strangulation and rape of a three-year-old child. The jury found one aggravating circumstance, that the killing was committed during the course of a felony, rape. Tenn.Code Ann. § 39–2–203(i)(7) (1982). The jury was instructed, but did not find that the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind. Tenn.Code Ann. § 39–2–203(i)(5) (1982). The jury imposed a sentence of life imprisonment. The Rule 12 report reflects that substantial mitigation proof was introduced, including that the defendant had no prior criminal record. Again unlike the defendant in this case, Allen was not related to the victim. In fact, Allen was not even acquainted with the victim. On the Rule 12 report, the trial judge noted, "[a]lthough this was a horrible case involving sexual abuse, ligature strangulation, and hiding the body of a three year old child, I feel the life sentence was proper in view of the youth and prior good record of the defendant."

In each of the similar cases in which a sentence less than death was imposed, there is a discernible basis for the lesser sentence. *State v. Carter,* 714 S.W.2d 241, 251 (Tenn. 1986). Indeed, the differences are not only discernible, they are striking. None of the defendants sentenced to life imprisonment or life imprisonment without the possibility of parole had been previously convicted of violent felony offenses. Two of the three had no prior criminal record. All three of the defendants in those cases introduced substantial mitigation proof. None of the three

had a familial relationship with the victim of the offense. Accordingly, there is a discernible basis for the lesser sentence in each similar life case. Based upon our review, we conclude that the following cases in which the death penalty has been imposed have many similarities with this case.

In *State v. Keen,* 926 S.W.2d 727 (Tenn. 1994), the twenty-seven-year-old boyfriend of the victim's mother held his hand over the eight-year-old victim's mouth and raped her until she defecated. He then tied a shoe string around the victim's throat so tightly that it cut into her neck, and threw her body into the Wolf River. After the defendant pled guilty to felony murder and aggravated rape, a sentencing hearing was held. The jury found three aggravating circumstances[8] and imposed a sentence of death.

In *State v. Irick,* 762 S.W.2d 121 (Tenn. 1988), the twenty-six-year-old defendant was babysitting a friend's children, including the victim. As in this case, the defendant raped the seven-year-old victim vaginally and anally. The victim suffocated as he held his hand over her mouth to keep her from screaming. The defendant was convicted by a jury of first degree felony-murder and aggravated rape. Following a sentencing hearing, the jury found four aggravating circumstances[9] and sentenced the defendant to death. The defendant had offered mitigating evidence that he had been under the influence of marijuana or alcohol at the time he committed the offense, and that he had a past mental impairment.

In *State v. Coe,* 655 S.W.2d 903 (Tenn. 1983), the defendant was a stranger to the eight-year-old victim. He lured her into his car, drove to an isolated spot, and raped her. When Coe completed the rape, the victim told him that Jesus loved him. At that point,

---

8. (1) The murder was committed against a person less than twelve (12) years of age and the defendant was eighteen (18) years of age or older; (2) The murder was especially heinous, atrocious or cruel in that it involved torture, or depravity of mind; (3) The murder was committed while the defendant was engaged in committing or attempting to commit rape. Tenn.Code Ann. § 39–2–203(i)(1);(5) & (7) (1982).

9. (1) The murder was committed against a person less than twelve (12) years of age and the defendant was eighteen (18) years of age or older; (2) The murder was especially heinous, atrocious or cruel in that it involved torture, or depravity of mind; (3) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another; and (4)The murder was committed while the defendant was engaged in committing or attempting to commit rape. Tenn.Code Ann. § 39–2–203(i)(1),(5),(6) & (7) (1982).

the defendant strangled the victim until she turned blue. When the victim did not immediately die from the strangulation, he stabbed her in the neck with a pocket knife and watched as she suffered agonizing death throes. Eventually, he left her to die in the wooded area. Coe was convicted of first degree felony murder, kidnaping and aggravated rape. Following the sentencing hearing the jury found the presence of four aggravating circumstances [10] and sentenced the defendant to death. The defendant had offered as mitigating evidence the theory that he had been under the influence of extreme mental or emotional disturbance at the time he committed the offense.

In these three cases, as in the present case, the defendant murdered and raped a child victim. The victim in each case was particularly helpless to the attack, as was the victim in this case. The disparity of strength between the victim and the defendant in each of the three cases was great, as it was in this case. In two of the three cases, the victim was acquainted with her assailant. In this case, the victim not only was acquainted with her killer, she was related to him. He was her father. Certainly, that fact exacerbates the horrific nature of this killing. In two of the three cases, the assault occurred in the victim's own home, as in this case. In all three of the prior cases, the jury found that the murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind. Similarly, in this case, the jury found that the murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death. After reviewing the cases discussed above and many other

cases not herein detailed,[11] we are of the opinion that the penalty imposed by the jury in this case is not disproportionate to the penalty imposed for similar crimes.

## CONCLUSION

In accordance with the mandate of Tenn. Code Ann. § 39–13–206(c)(1) (1997 Repl.), and the principles adopted in prior decisions of this Court, we have considered the entire record in this cause and find that the sentence of death was not imposed in any arbitrary fashion, that the evidence supports, as previously discussed, the jury's finding of the statutory aggravating circumstances, and the jury's finding that the aggravating circumstances outweighed mitigating circumstances beyond a reasonable doubt. Tenn.Code Ann. § 39–13–206(c)(1)(A)—(C) (1997 Repl.). We have considered the defendant's assignments of error and determined that none require reversal. With respect to issues not specifically addressed herein, we affirm the decision of the Court of Criminal Appeals, authored by Judge Thomas T. Woodall, and joined in by Judge David G. Hayes and Judge David H. Welles. Relevant portions of that opinion are published hereafter as an appendix. The defendant's sentence of death by electrocution is affirmed. The sentence shall be carried out as provided by law on the 29th day of January, 1999, unless otherwise ordered by this Court or other proper authorities.

ANDERSON, C.J., and HOLDER, J., concur.

BIRCH, J., dissents with separate opinion, and REID, Special Justice, joins.

---

**10.** The murder was committed against a person less than twelve (12) years of age and the defendant was eighteen (18) years of age or older; (2) The murder was especially heinous, atrocious or cruel in that it involved torture, or depravity of mind; (3) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another; and (4)The murder was committed while the defendant was engaged in committing or attempting to commit rape. Tenn.Code Ann. § 39–2–203(i)(1),(5),(6) & (7) (1982).

**11.** There are certainly other cases in Tennessee in which the defendant has been sentenced to death which are similar to this one in terms of the method and manner of death, strangulation and violence. *See e.g. State v. Hodges*, 944 S.W.2d 346 (Tenn.1997); *State v. Cauthern*, 778 S.W.2d 39 (Tenn.1989); *State v. Johnson*, 743 S.W.2d 154 (Tenn.1987); *State v. O'Guinn*, 709 S.W.2d 561 (Tenn.1986). However, we deem it unnecessary to discuss in detail the facts of these cases, since the circumstances in the three cases discussed above are so closely similar to the circumstances of this case.

APPENDIX

(Excerpts from the Court of Criminal Appeals' Decision)

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
DECEMBER SESSION, 1996

State of Tennessee, Appellee,

v.

Gussie Willis Vann, Appellant.

C.C.A. NO. 03C01–9602–CC–00066.

McMINN COUNTY, HON. R. STEVEN BEBB, JUDGE (FELONY MURDER—DEATH PENALTY; INCEST)

*FOR THE APPELLANT:*

KENNETH MILLER
Attorney at Law
P.O. Box 191
Cleveland, TN 37364–0191
(At Trial)

ASHLEY L. OWNBY
Attorney at Law
180 N. Ocoee Street
P.O. Box 176
Cleveland, TN 37364–0176
(At Trial and On Appeal)

BROCK MEHLER
Attorney at Law
751 Roycroft Place
Nashville, TN 37203
(On Appeal)

*FOR THE APPELLEE:*

JOHN KNOX WALKUP
Attorney General & Reporter

MICHAEL E. MOORE
Solicitor General

KATHY MORANTE
Deputy Attorney General

JOHN P. CAULEY
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243–0493

JERRY N. ESTES
District Attorney General
203 East Madison Avenue
P.O. Box 647

Athens, TN 37371

OPINION FILED: June 10, 1997.

AFFIRMED

THOMAS T. WOODALL, JUDGE.

*OPINION*

*ANALYSIS*

**WHETHER THE EVIDENCE WAS SUFFICIENT TO SUSTAIN THE DEFENDANT'S CONVICTIONS FOR FELONY MURDER AND TWO COUNTS OF INCEST.**

The Defendant contends that the evidence was insufficient to sustain the Defendant's convictions for felony murder and incest. First, the Defendant argues that the evidence failed to prove he was the perpetrator of the crime. He states that the proof was entirely circumstantial and the circumstances were not so strong and cogent as to exclude every other reasonable hypothesis by a reasonable doubt. He asserts that the State failed to exclude the reasonable hypothesis that Ms. Vann committed the murder. Second, he contends that the evidence failed to prove that the killing was committed in furtherance of a rape.

When the sufficiency of the evidence is questioned on appeal, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This means that the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). Likewise, the determination of the weight and credibility of the testimony of witnesses and reconciliation of conflicts in that testimony are entrusted exclusively to the trier of fact, in this case, the jury. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn.1984); *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn.Crim.App.1978). Further, the standard for appellate review is the same whether the conviction is based upon direct

or circumstantial evidence. *State v. Johnson*, 634 S.W.2d 670, 672 (Tenn.Crim.App. 1982).

An offense may be proven by circumstantial evidence alone. *Price v. State*, 589 S.W.2d 929, 931 (Tenn.Crim.App.1979). However, where a conviction is based upon entirely circumstantial evidence, as the State concedes in this case, the jury must find that the proof is not only consistent with the guilt of the accused but inconsistent with his innocence. There must be an evidentiary basis upon which the jury can exclude every other reasonable theory or hypotheses except that of guilt. *Pruitt v. State*, 3 Tenn.Crim.App. 256, 460 S.W.2d 385, 390 (1970).

In this case, the evidence against the Defendant began with his own statements. His account of his whereabouts on the evening of the victim's death was directly contradicted by the testimony of the store clerk and the cash register receipts showing that the items he claimed to purchase had not been purchased. He also made odd comments, unrelated to the event, concerning other individuals when he stated that he never suspected that his daughter would commit suicide but that she had on a few occasions spent the night with her Uncle Dan, Linda Rogers, and a male friend of his. He also admitted to having an affair with Linda Rogers.

The jury could certainly have viewed his statements as self-serving and an attempt to deflect suspicion. He was seemingly offering other suspects who could have raped his daughter and some explanation for why he would have no sexual motive to rape her.

The behavior of the Defendant before and after being told of the victim's death also supported the State's theory. The Defendant told the paramedic at the scene that the victim had apparently choked on popcorn. However, the autopsy revealed that no popcorn was ingested by the victim. Dr. Martin, the emergency room physician, described the Defendant as "really cool" and "totally oblivious to the fact that he was just informed that his daughter was dead."

The medical evidence also pointed to the Defendant as the perpetrator. Dr. Toolsie,

the pathologist who performed the autopsy on the victim, testified that the tearing of the muscle tissue in the victim's neck could only have resulted from the exertion of great force upon the victim. When asked if it would have been possible for a woman to exert such force, his response was that "[i]t would depend on how athletic she is."

Although Chester Blythe, the F.B.I. expert in hair and fiber comparisons, testified that hair found on the rope believed to have been used to strangle the victim matched those of Ms. Vann and the victim, hair samples taken from the Defendant were apparently lost. Consequently, no comparison was conducted.

In essence Defendant's argument is that either Bernice Vann or Defendant killed Necia Vann in the perpetration of rape, to the mutual exclusion of each other. He argues that the preponderance of the evidence indicates Bernice Vann committed the homicide.

With the jury being entitled to reject Defendant's alibi in his statement due to contradictory testimony contained in this record, the proof overwhelmingly shows that Defendant and his wife were the only adults present in the home when Necia Vann died. Furthermore, the jury was entitled to infer from the evidence that an adult male exerted the excessive force necessary to do the damage resulting from the ligature strangulation. The proof indicates that it was Defendant's sperm on the victim's bed sheet. It was the Defendant who was essentially nude with the victim when a neighbor and paramedics arrived. The jury, as the trier of fact, was entitled to reject certain evidence brought out through Defendant's cross-examination and direct examination which attempted to give an innocent explanation of the incriminating evidence against him.

In *Pruitt v. State, supra,* this Court quoted from *Marable v. State,* 203 Tenn. 440, 313 S.W.2d 451 (1958), wherein it held,

Weight of circumstantial evidence is a question for the jury to determine. The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent

with innocence are questions primarily for the jury.

*Pruitt* at 391.

The most damaging evidence against the Defendant was perhaps the medical testimony related to the sexual assault upon the victim. He asserts that the State failed to prove that the murder was committed during the commission of rape. However, much of the medical and forensic testimony supports the State's theory.

The medical examiner, the paramedic who arrived at the scene, and the criminal investigator who was dispatched to the emergency room each testified that they observed blood coming from the victim's genital area. Dr. Toolsie, the medical examiner who performed the autopsy of the victim, testified that there was evidence of repeated sexual abuse, and that there was strong evidence that the most recent of the abuse "probably occurred at about the time of death." There was a tear to the lining of the vagina, fresh bruising was apparent on the inside of the vaginal wall, and the marked lack of muscle tone in the anal area made rectal penetration possible without leaving any appreciable injury. Dr. Toolsie also testified that the magnitude of the injury, including the tearing of muscles, with associated bleeding underlying the rope mark on the victim's neck, indicated that substantial pressure must have been applied to the ligature. He testified that the magnitude of the force required to produce the injury could not have been inflicted by a child and only by a female who was quite athletic.

Physical evidence also pointed to the Defendant as the perpetrator of the sex offenses. Except for a blanket wrapped around him, the Defendant was nude when paramedics arrived at his house on the night of the child's death. Semen stains found on the victim's bed sheets matched those of the Defendant, and an F.B.I. Agent specializing in DNA analysis testified that the odds of finding another individual whose DNA profile would match those found on the sheet were one in ten thousand.

In summary, while the evidence of the elements of the crimes was circumstantial, the conduct of the Defendant, the medical evidence, and the physical evidence were proof from which the jury could have concluded that the Defendant strangled the victim during the perpetration of rape. Also, proof of anal and vaginal penetration was sufficient to support the two convictions of incest. Accordingly, this issue is without merit.

### REFUSING TO INSTRUCT THE JURY THAT THE STATE'S CASE WAS ENTIRELY CIRCUMSTANTIAL.

At the conclusion of the guilt phase of the trial, the Defendant requested the trial court to instruct the jury that there had been no direct evidence presented linking the Defendant to the charged offenses. The trial court refused such request and instead gave the following instruction:

The guilt of the Defendant as well as any fact required to be proved may be established by direct evidence, by circumstantial evidence, or by both combined.

Direct evidence is defined as evidence which proves the existence of the fact in issue without inference or presumption. Direct evidence may consist of testimony of a person who has perceived by the means of his senses the existence of a fact, sought to be proved or disproved.

Circumstantial evidence consists of proof of collateral facts and circumstances which do not directly prove the fact in issue but from which that fact may be logically inferred.

When the evidence is made up of entirely circumstantial evidence, then before you would be justified in finding the Defendant guilty, you must find that all the essential facts are consistent with the hypothesis of guilt, as that is to be compared with all the facts proved; the facts must exclude every other reasonable hypotheses except that of guilt; and the facts must establish such a certainty of guilt of the Defendant as to convince the mind beyond a reasonable doubt that the Defendant is the one who committed the offense. It is not necessary that each particular fact should be proved beyond a reasonable doubt if enough facts are proved to satisfy the jury beyond a reasonable doubt of all the facts necessary

to constitute the crime charged. Before a verdict of guilty is justified, the circumstances, taken together, must be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion and producing in effect a moral certainty that the Defendant, and no one else, committed the offense.

These instructions were taken from the Tennessee Criminal Pattern Jury Instructions, 37.06, and are accurate statements of the law. *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451, 456–57 (1958). Where the trial court's instructions on a matter are proper, its denial of a special request is not error. *Shell v. State*, 584 S.W.2d 231, 235 (Tenn.Crim.App.1979). We conclude that the trial court's thorough instruction of the law was sufficient to counter the Defendant's request for a specific instruction that the State's case was based entirely upon circumstantial evidence. This issue is without merit.

## THE "SEXUAL PENETRATION" INSTRUCTION

The Defendant next asserts that the trial court's instruction on sexual penetration was in error. Specifically, he asserts that because the court defined sexual penetration as "[a]nal intercourse, or any other intrusion, however slight of . . . [t]he anal opening of another person's body," the jury could thereby convict the Defendant of felony murder based on evidence of anal penetration. He contends that the jury should not have been allowed to convict the Defendant of felony murder based on anal penetration because the evidence of anal penetration was based upon past incidents of sexual abuse not connected with the murder.

The Defendant has quoted in his brief only part of the trial court's instruction which in its entirety states the following:

Sexual penetration means sexual intercourse, or any other intrusion, however slight, of any pat [sic] of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required.

The Defendant is thereby incorrect in asserting that the trial court instructed the jury that only evidence of anal penetration would allow him to be convicted of felony murder. Moreover, we have previously determined that the evidence was sufficient to convict the Defendant of felony murder and incest by anal penetration. This issue is without merit.

## WHETHER PRETRIAL PUBLICITY PREJUDICED THE DEFENDANT.

The Defendant next claims that the trial court erred in failing to change venue, in failing to inquire regarding the nature of each juror's exposure to prejudicial publicity, and in failing to admonish the jury pursuant to Rule 24(f), Tenn. R.Crim. P. We disagree.

### CHANGE OF VENUE

The Defendant contends that the trial court erred by denying his motion for a change of venue due to pretrial publicity. He claims that because only four (4) prospective jurors in the entire venire had not heard of the case and the trial court excused more than twenty-five (25) persons initially for cause, the trial court should have been aware of the prejudicial nature of the pretrial publicity and should have granted the motion. In support of his argument, the Defendant cites *State v. Hoover*, 594 S.W.2d 743 (Tenn. Crim.App.1979). The matter of change of venue addresses itself to the sound discretion of the trial court, and a denial of a change of venue will only be reversed on appeal for an affirmative and clear abuse of discretion. *State v. Bates*, 804 S.W.2d 868, 877 (Tenn. 1991), *cert. denied*, 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991). In this case we find no abuse of discretion on the part of the trial court.

In *Hoover*, 594 S.W.2d at 746, this court listed a group of seventeen (17) factors to be considered in determining whether to grant a change of venue. Among these are the nature, extent, and timing of the pretrial publicity, the degree of care exercised in the selection of the jury, the venire's familiarity with the publicity and its effect upon them as shown through their answers on voir dire, and the Defendant's utilization of his peremptory challenges.

In this case, we conclude that the trial court carefully and meticulously orchestrated the jury selection process to insure the Defendant a fair trial. He instructed the prospective jurors as to their responsibilities, questioned them extensively as to pretrial publicity, excused jurors for cause, and allowed *voir dire* in panels of three (3) prospective jurors. Moreover, the Defendant only exercised five (5) of his fifteen (15) peremptory challenges. This issue is without merit.

## FAILURE TO INQUIRE AS TO THE NATURE OF EACH JUROR'S EXPOSURE TO PRETRIAL PUBLICITY.

The Defendant asserts that no efforts were made to assess the likelihood of prejudice from pretrial exposure and that the trial court should have been exceptionally vigilant to ensure that prospective jurors had not been exposed to inadmissible matters contained in the media reports. However, as previously stated, we conclude that the trial court thoroughly discussed the presumption of innocence and the State's burden of proof with each of the potential jurors. Each of the jurors who served on the jury indicated that they either had no prior opinion of the case or that they could set that opinion aside. This issue is without merit.

## FAILURE TO ADMONISH THE JURY PURSUANT TO RULE 24(f),TENN. R. CRIM. P.

The Defendant contends that the trial court erred in admonishing the jury only once. He contends that the admonishment given the evening before the trial commenced and before the jury was sworn was insufficient to protect against the risk that the jurors would be exposed to media coverage of the case. We disagree.

When the potential jury was selected, the trial court instructed the jury as follows:

At this point since we have a jury, and I want to say to you that you are embarking upon tomorrow morning a case that is very important, very important to the State of Tennessee and very important to Gus Willie Vann, and as I said to you this morning, all I ask and that we all ask is that you try your very best to do what you believe justice is under the facts of this case, that you listen hard to the evidence and make the best decision you can make and we will all be happy. Since at this point the jury has not been sworn and no evidence has been presented we are going to allow you to go to your home this evening. However, let me say to you that you need to feel as if you were under oath because these lawyers in both sides are depending on you for justice, as well as Mr. Vann and the witnesses that the State is using in their prosecution. They and myself are depending on you for justice. And in order to do justice I would ask that you refrain tonight from watching the television news reports, from reading the newspapers, and discussing this case with your spouse or girlfriend or boyfriend. I don't mean you can't say, 'I'm on the jury,' but I think that needs to be it really. One of the hardest things that you will be required to do I guess is not talk about it. But just tell them, if it [is] your friends or somebody who wants to know, or your husband or wife, 'Hey, I've been instructed not to talk about it and I will tell you about it when its over.'

Here, the trial court was commendably concerned that the jury understand its duty to not discuss the case. The trial court had previously spent a great deal of time during *voir dire* insuring that the jurors had not formed and would not form an opinion until the case was submitted to the jury. The Defendant has failed to show that any of the jurors who actually sat on the case were prejudiced by any publicity or the trial court's failure to repeatedly admonish them. *See State v. Garland,* 617 S.W.2d 176, 187 (Tenn.Crim.App.1981); *State v. Kyger,* 787 S.W.2d 13, 18–19 (Tenn.Crim.App.1989). This claim is also without merit.

## WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE FINDING OF THE "PRIOR VIOLENT FELONY" AGGRAVATOR.

The Defendant argues that the introduction of his two (2) prior convictions for aggravated rape are insufficient to support the jury's reliance on the aggravating circumstance which states that "[t]he Defendant

was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person." Tenn.Code Ann. § 39–13–204(i)(2). The Defendant contends that since aggravated rape may be proved by a showing that there was unlawful sexual penetration of a victim less than thirteen (13) years old, aggravated rape does not necessarily involve violence to the person.

At sentencing, the State relied upon two (2) judgments of conviction for aggravated rape against the Defendant. Defense counsel objected, contending that in a case of aggravated rape where the child is under thirteen, there could be a consensual relationship in which there would be no violence. The trial court overruled the objection.

The Defendant's argument is without merit. In *State v. Hoyt*, 928 S.W.2d 935, 948 (Tenn.Crim.App.1995), this court stated unequivocally that "rape is a serious offense which is injurious to both the body and mind of the victim." The Tennessee Supreme Court has impliedly acknowledged the use of aggravated rape as an aggravating circumstance. *See State v. Nichols*, 877 S.W.2d 722, 737 (Tenn.1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). This issue is without merit.

### IMPROPER JURY INSTRUCTION

Citing *State v. Williams*, 690 S.W.2d 517, 529 (Tenn.1985), the Defendant maintains that the jury was improperly instructed on this aggravator because the instruction omitted "any requirement that the jury find that severe physical or mental pain was 'willfully' inflicted by the Defendant." The following instruction, in pertinent part, was given by the trial court:

> Tennessee law provides that no death penalty shall be imposed by a jury but upon a unanimous finding that the State has proven beyond a reasonable doubt the existence of one or more of the statutory aggravating circumstances which shall be limited to the following:

. . .

(3) The murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death.

You are instructed that the word:

. . .

'Torture' means the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious.

The Defendant has misconstrued the holding in *Williams*. No saving restriction that the Defendant must have "willfully" inflicted severe pain on the victim was placed upon Tennessee Code Annotated section 39–13–204(i)(5), but rather the court has repeatedly held that the instruction sufficiently narrows the class of death-eligible defendants. *See State v. Odom*, 928 S.W.2d 18, 26 (Tenn. 1996); *State v. Black*, 815 S.W.2d 166, 181 (Tenn.1991); *State v. Cazes*, 875 S.W.2d 253, 267 (Tenn.1994), *cert. denied*, 513 U.S. 1086, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995). This issue is without merit.

### WHETHER THE "REASONABLE DOUBT" INSTRUCTION VIOLATES DUE PROCESS.

The Defendant contends that he was denied his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution because the jury was unconstitutionally instructed concerning the meaning of "reasonable doubt" at the guilt and sentencing phase of the trial. However, as the Defendant accurately notes, the supreme court and this court have consistently upheld the constitutionality of the instruction. *See State v. Nichols*, 877 S.W.2d 722, 734 (Tenn.1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *State v. Michael Dean Bush*, 942 S.W.2d 489, 504–05 (Tenn.1997)(for publication)(petition for reh'g, filed 4/14/97). This issue is also without merit.

## WHETHER THE CUMULATIVE EFFECT OF ALL ERRORS VIOLATES THE DEFENDANT'S CONSTITUTIONAL RIGHTS.

The Defendant contends that the cumulative effect of all errors alleged both at trial and at sentencing violates his constitutional rights. However, as this court finds no reversible error with respect to the Defendant's prior issues, this issue is without merit also.

## WHETHER TENNESSEE'S DEATH PENALTY STATUTE IS CONSTITUTIONAL.

The Defendant submits that the "Tennessee death penalty statute and the imposition of the sentence of death in this State violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as Article I, Sections 8, 9, 16 and 17, and Article II, Section 2 of the Tennessee Constitution" because (a) the statute fails to narrow the class of death-eligible defendants; (b) the sentence is imposed arbitrarily and capriciously; (c) electrocution is cruel and unusual punishment; and (d) the appellate review process is constitutionally inadequate. Defendant has acknowledged in his brief "that the majority of the issues raised" regarding the constitutionality of the Tennessee death penalty statute have been decided adversely to his arguments by the Tennessee Supreme Court. Defendant also admits he raised the issues "in order to preserve them for later review."

## THE STATUTE FAILS TO NARROW THE CLASS OF DEATH ELIGIBLE DEFENDANTS.

The Defendant first asserts that the aggravating circumstances set forth in Tennessee Code Annotated section 39–13–204, "have been so broadly interpreted that they fail to provide such a 'meaningful basis' for narrowing the population of those convicted of first degree murder to those eligible for the sentence of death" as mandated in *Furman v. Georgia,* 408 U.S. 238, 313, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). We disagree.

## THE "PRIOR VIOLENT FELONY" AGGRAVATING CIRCUMSTANCE IS UNCONSTITUTIONAL.

The Defendant contends that this aggravating circumstance is overly broad and contrary to the legislative intent in the manner in which it interprets "prior conviction" for purposes of capital sentencing. However, this issue has been previously addressed by our Supreme Court in *State v. Caldwell,* 671 S.W.2d 459, 465 (Tenn.1984), as correctly noted by the Defendant in his brief, in which "prior conviction" was defined as the date of the conviction for purposes of capital sentencing, and, therefore, is neither overly broad nor contrary to legislative intent. This issue is without merit. *See also State v. Nichols,* 877 S.W.2d 722, 736 (Tenn.1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995).

## THE "AVOIDING, INTERFERING WITH, OR PREVENTING THE LAWFUL ARREST OR PROSECUTION OF THE DEFENDANT" AGGRAVATING CIRCUMSTANCE IS UNCONSTITUTIONAL.

The Defendant maintains that because this circumstance has been applied in cases where a victim "could have identified the perpetrator" the circumstance in itself does not sufficiently narrow the population of death eligible defendants. The trial court directed a judgment against the application of this aggravating circumstance. Therefore, this circumstance was neither found by the jury nor charged in this case, and the issue is moot.

## THE "HEINOUS, ATROCIOUS, OR CRUEL" CIRCUMSTANCE IS VAGUE AND OVERBROAD.

The Defendant asserts that this circumstance is unconstitutional in that it does not include an element of intent, but we have previously addressed this claim in this opinion and found it to be without merit. *See* § III(8)(C).

## IN COMBINATION, SUBSECTIONS (I)(2), (5), (6), AND (7) DO NOT NARROW THE CLASS OF DEATH ELIGIBLE DEFENDANTS.

The Defendant argues that, in combination, these aggravating circumstances encompass the majority of homicides committed in

this State, and the statute does not therefore narrow the class of death eligible defendants. Again, the supreme court has repeatedly rejected this argument. *See State v. Keen,* 926 S.W.2d at 742.

**THE DEATH SENTENCE IS IMPOSED CAPRICIOUSLY AND ARBITRARILY.**

On multiple grounds, the Defendant asserts that the death penalty is imposed capriciously and arbitrarily, but all grounds have been previously addressed by our supreme court. He asserts that (1) unlimited discretion is vested in the prosecutor as to whether or not to seek the death penalty; (2) the death penalty is imposed in a discriminatory manner due to economics, race, geography, and gender; (3) there is a lack of uniform standards for jury selection; (4) the death qualification process skews the make-up of the jury and results in a prosecutorially prone jury; (5) defendants are prohibited from addressing jurors' misconceptions about such matters as cost of incarceration versus execution, deterrence, and method of execution; (6) the jury is required to agree unanimously in order to impose a life sentence; (7) the jury is required to unanimously agree that mitigating circumstances are applicable in violation of *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) and *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990); (8) the jury is not instructed on the meaning and function of mitigating circumstances; (9) the jury is not required to make the ultimate determination that death is the appropriate penalty because of the "mechanistic" procedure for guiding the jury's decision making; and (10) the defendant is denied final closing argument in the penalty phase of the trial. We find the Defendant's arguments to be without merit. They have been specifically rejected in *State v. Smith,* 893 S.W.2d 908, 926 (Tenn.1994), *cert. denied,* 516 U.S. 829, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995), and their substance rejected in *State v. Thompson,* 768 S.W.2d 239 (Tenn.1989), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3288, 111 L.Ed.2d 796 (1990); *State v. Boyd,* 797 S.W.2d 589 (Tenn. 1990), *cert. denied,* 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991); *State v. Teel,* 793 S.W.2d 236 (Tenn.1990); *State v. Black,* 815 S.W.2d 166 (Tenn.1991); *State v. Smith,* 857 S.W.2d 1 (Tenn.1993), *cert. denied,* 510 U.S. 996, 114 S.Ct. 561, 126 L.Ed.2d 461 (1993); and*State v. Cazes,* 875 S.W.2d 253 (Tenn.1994).

**ELECTROCUTION IS CRUEL AND UNUSUAL PUNISHMENT.**

The Defendant contends that electrocution is an unnecessarily painful and torturous form of execution. However, this issue has also been previously determined by our Supreme Court, and accordingly, we conclude that this issue is without merit. *See State v. Black,* 815 S.W.2d at 179.

**THE APPELLATE REVIEW PROCESS IS CONSTITUTIONALLY INADEQUATE.**

The Defendant asserts that the appellate review process is not meaningful and is conducted in violation of due process. The Defendant notes that no death sentence has been overturned on the grounds that it was disproportionate. He attacks the absence of written findings concerning mitigating circumstances, the inadequacy of the information found in forms completed by trial courts as required by Tennessee Supreme Court Rule 12, and the lack of any published indicia or criteria for consideration which can be addressed by the Defendant.

Numerous cases, however, have held that Tennessee's proportionality review is adequate to meet State constitutional standards. *See State v. Coleman,* 619 S.W.2d 112, 115–16 (Tenn.1981); *State v. Barber,* 753 S.W.2d 659, 663–668 (Tenn.1988); *State v. Keen,* 926 S.W.2d 727, 743–44 (Tenn.1994). Moreover, in this particular case, published opinions and available trial court reports prepared pursuant to Rule 12 of the Tennessee Supreme Court have been reviewed, and this examination revealed that the Defendant's death sentence is neither excessive nor disproportionate considering both the nature of the crime and the Defendant. *See State v. Coe,* 655 S.W.2d 903 (Tenn.1983); *State v. Irick,* 762 S.W.2d 121 (Tenn.1988); *State v. Cauthern,* 778 S.W.2d 39 (Tenn.1989) (death sentence reversed and remanded for new sentencing hearing on ground of trial court error in admitting statement by the defendant during sentencing hearing); *State v. Keen,* 926

S.W.2d 727 (Tenn.1994) (death sentence reversed and remanded for new sentencing hearing due to error in jury instruction).

The sentence of death in this case was not imposed in an arbitrary fashion. The evidence in the record supports the jury's finding of the statutory aggravating circumstances, and that the aggravating circumstances clearly outweighed the evidence introduced to establish any mitigating factors beyond a reasonable doubt. Tenn.Code Ann. § 39–13–206(c)(1).

### CONCLUSION

The Defendant has offered no grounds that warrant relief from his convictions of felony murder, incest by vaginal penetration, and incest by anal penetration. Moreover, we conclude that the Defendant has failed to establish any ground warranting relief from his sentence of death. The judgment of the trial court is affirmed.

/s/ Thomas T. Woodall
Thomas T. Woodall, Judge

Concur:

/s/ David H. Welles
David H. Welles, Judge

(See Separate Concurring)

David G. Hayes, Judge

BIRCH, Justice, dissenting.

I agree with the majority's resolution of every issue in this case but one: the effect of the trial court's failure to instruct the jury on second-degree murder. The majority concludes that the trial court's failure to instruct the jury on the offense of second-degree murder is not error because the evidence in the record does not support that offense. Because I find the evidence can indeed support a conviction of second-degree murder, I respectfully dissent.

As the majority explained, the State charged the defendant with both premeditated first-degree murder and first-degree murder in the perpetration of rape. Before the case was submitted to the jury, the State requested that the charge of premeditated murder be dismissed. The trial court dismissed that charge, and the case was submitted to the jury on the theory of felony-murder. The trial court instructed the jury solely on the offense of felony-murder.

In *State v. Cleveland,* 959 S.W.2d 548, 553 (Tenn.1997), this Court held that trial courts are statutorily required to instruct juries on all lesser-included and "lesser-grade or class"[1] offenses, if the evidence introduced at trial is legally sufficient to support a conviction for the lesser offenses. If the record is devoid of such evidence, then failure to charge a lesser offense does not constitute error.

The evidence in the instant case is legally sufficient to support a conviction for the lesser offense of second-degree murder. Under Tenn.Code Ann. § 39–13–210(a)(1) (1991), second-degree murder requires proof of a knowing killing. The act of strangulation with a rope, the probable murder instrument, is certainly an act which suggests the intent to kill, particularly in this case, where the strangulation was described as "violent." Thus, the jury could infer from the evidence presented that the strangulation was perpetrated knowingly or intentionally. Indeed, the State proceeded on the theory of premeditated murder up to the point when closing arguments were made and the case was submitted to the jury for deliberation. Clearly, then, the State interpreted the evidence as having established intentional conduct.[2]

Furthermore, the forensic evidence of the rape and strangulation injuries does not conclusively show that they were inflicted at the same time. Ron Toolsie, M.D., who per-

---

1. An offense is "lesser-included" if it contains no elements that are not contained in the greater offense. A "lesser-grade" offense is "established by the legislature and is determined simply by looking at the offenses set forth in a statutory chapter and part." A "lesser-grade" offense may contain elements not contained in the greater offense. *Cleveland,* 959 S.W.2d at 553.

2. If the evidence shows intent, then necessarily it also shows knowledge. Tenn.Code Ann. § 39–11–301(a)(2) (1991)("When acting knowingly suffices to establish an element, that element is also established if a person acts intentionally.")

formed the autopsy on the victim, testified that the injuries to the vagina had occurred "very shortly" prior to her death. An estimation of how much time the phrase "very shortly" encompassed is not provided. And because there was no evidence of recent injury to the anus, he could not determine when the anus had last been penetrated. Thus, the evidence supports the inference that the sexual injuries were prior to, and separate from, the strangulation, just as well as it supports the inference that the injuries were inflicted concurrently.

Because the evidence could support a conviction for second-degree murder, the trial court erred in failing to instruct the jury on that offense. The next question is, of what effect is the error? The majority in *State v. Williams* applied a harmless error analysis and affirmed the conviction in that case. 690 S.W.2d 517.

In my view, however, the right to a jury instruction on lesser offenses supported by the evidence is not merely a statutory right provided by Tenn.Code Ann. § 40–18–110(a) (1990). Essentially, it is an inherent component of the basic constitutional right to trial by jury, the violation of which can never be treated as harmless error. *Williams,* 690 S.W.2d at 532 (Birch, J., dissenting); *see also* Tenn. Const. art. I, § 6 ("the right of trial by jury shall remain inviolate"); *State v. Bobo,* 814 S.W.2d 353, 358 (Tenn.1991); *State v. Staggs,* 554 S.W.2d 620, 626–27 (Tenn.1977); *Strader v. State,* 210 Tenn. 669, 679–82, 362 S.W.2d 224, 229–30 (1962). Thus, I would hold that the failure to provide such instruction is not subject to harmless error analysis.

Moreover, even if the harmless error analysis is applied, the error in this case would still require reversal. In *Williams,* the finding of harmlessness was predicated on the fact that the trial court provided instructions on two lesser offenses, second-degree murder and reckless homicide. The defendant argued that the trial court committed reversible error by refusing to also instruct the jury on voluntary manslaughter, an offense the State conceded was supported by the evidence. The majority disagreed, reasoning that "by finding the defendant guilty of the highest offense, to the exclusion of the imme-

diately lesser offense, second degree murder, the jury necessarily rejected all other lesser offenses, including voluntary manslaughter." In contrast, here the jury did not have an opportunity to reject the "immediately lesser offense," or any other lesser offense. They instead were offered the choice of first-degree murder or acquittal. Surely, one must conclude that this error more probably than not affected the judgment to the defendant's prejudice, particularly in light of the sordid facts before the jury.

Perhaps the majority's reluctance to recognize that a conviction for second-degree murder is supportable may be attributable, at least in part, to the sordid nature of the facts involved. But constitutional rights must be protected with equal vigor for every defendant, regardless of the heinousness of the crime for which he or she is charged. Consequently, under the circumstances of this case I would be constrained to remand the case for retrial. Thus, I must respectfully dissent.

I am authorized to state that Special Justice Reid joins this dissenting opinion.

### ORDER ON PETITION FOR REHEARING

A petition for rehearing has been filed on behalf of appellant. After consideration of the same, a majority of the Court is of the opinion that the petition should be and the same is hereby denied at the cost of appellant.

Justice Birch and Special Justice Reid adhere to the views expressed in their original dissenting opinion.

/s/ <u>Frank F. Drowota, III</u>
 <u>Frank F. Drowota, III, Justice</u>