# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### June 2000 Session

## STATE OF TENNESSEE v. EUGENE A. TURNER

**Appeal from the Criminal Court for McNairy County**
**No. 1160    Jon Kerry Blackwood, Judge**

---

### No. W1999-01866-CCA-R3-CD - Decided October 2, 2000

---

Defendant appeals his jury convictions on two counts of premeditated first degree murder for which he received concurrent life sentences. The following issues are presented for our review: (1) whether the evidence was sufficient to support the convictions; (2) whether the trial court erred in disallowing impeachment evidence against a state witness; (3) whether the trial court erroneously admitted evidence of defendant being a beneficiary of life insurance policies on one of the victims; (4) whether the trial court erroneously admitted inflammatory evidence relating to the crime scene; (5) whether the trial court erred in allowing evidence of alleged threats made by the defendant; (6) whether the trial court erred in allowing evidence of a prior argument between the defendant and one of the victims; and (7) whether the trial court erred in disallowing evidence of defendant's failure to flee and avoid arrest. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

C. Michael Robbins, Memphis, Tennessee (on appeal), and Gary F. Antrican, District Public Defender, Somerville, Tennessee (at trial), for the appellant, Eugene A. Turner.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; James W. Freeland, Jr. and Jerry W. Norwood, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

Defendant was convicted by a McNairy County jury of the premeditated first degree murders of his wife and stepdaughter, for which he received two concurrent life sentences. In this appeal as of right, he presents the following issues:

(1)    whether the evidence was sufficient to support the convictions;

(2)   whether the trial court erred in disallowing impeachment evidence against a state witness;

(3)   whether the trial court erroneously admitted evidence of defendant being a beneficiary of life insurance policies on one of the victims;

(4)   whether the trial court erroneously admitted inflammatory evidence relating to the crime scene;

(5)   whether the trial court erred in allowing evidence of alleged threats made by the defendant;

(6)   whether the trial court erred in allowing evidence of a prior argument between the defendant and one of the victims; and

(7)   whether the trial court erred in disallowing evidence of defendant's failure to flee and avoid arrest.

After a careful review of the record, we find no reversible error and affirm the judgments of the trial court.

## FACTS

On December 3, 1997, at 12:41 a.m. the defendant placed a 911 call to the McNairy County Sheriff's Office. He told the dispatcher someone had broken into his home and shot his wife. Officers later discovered the bodies of defendant's wife and stepdaughter at the residence. Both had been shot in the head with a .9mm handgun. The wife had multiple near gunshot wounds to the head, and the stepdaughter had one near gunshot wound to the head. The family dog had also been shot and killed. However, there was no evidence of forced entry into the mobile home and no evidence of a struggle inside.

Several witnesses testified that they saw the defendant with a .9mm handgun a few weeks prior to the murder. Dewayne Scott testified that he loaned the defendant a .9mm Ruger approximately six months prior to the murder, and the defendant never returned the weapon. Analysis of the clothing defendant was wearing on the night of the murders revealed the presence of gunpowder residue.

Additionally, two different individuals heard the defendant threaten to kill his wife prior to the murders. One witness testified that the couple fought over the family dog on several occasions. Approximately one week before the murder, the defendant stated that "if the dog gets put to sleep, the whole damn family will get put to sleep." Another witness testified that the defendant warned his wife on two separate occasions that if she tried to leave him, he would kill her. Furthermore, the couple's babysitter stated that she witnessed a drunken altercation between the couple. She stated the two were "fussing," and the defendant placed an unloaded gun to his wife's head and pulled the trigger several times.

Thomas Kiracofe, the defendant's cellmate, testified that the defendant told him he shot his wife during an argument over the dog. Kiracofe stated defendant then told him that he shot his stepdaughter because she was a witness to his wife's murder. Kiracofe further testified that he and the defendant planned to escape from prison.

The defendant did not testify at trial but his statement to authorities was read to the jury. In that statement the defendant stated that he had been out drinking on the night in question, did not own a gun, and did not kill his wife and stepdaughter. Defendant also endeavored to show through other witnesses that he was cooperative with authorities throughout the investigation and voluntarily surrendered himself for questioning.

The jury convicted the defendant of two counts of premeditated murder, and he received two concurrent life sentences.

## SUFFICIENCY OF THE EVIDENCE

The defendant alleges the evidence is insufficient to support his conviction for first degree murder. Specifically, the defendant claims the state failed to prove he was the perpetrator and further failed to establish premeditation. We disagree.

### A. Standard of Review

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *Id.*; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the tries of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

## B. Premeditation

The applicable definition of first degree murder is, "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Premeditation necessitates "a previously formed design or intent to kill," State v. West, 844 S.W.2d 144, 147 (Tenn. 1992)(citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). It also requires that the accused be "sufficiently free from excitement and passion as to be capable of premeditation." *Id.*

Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Our Supreme Court delineated several circumstances that may be indicative of premeditation, including declarations by the defendant of an intent to kill, evidence of procurement of a weapon, the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, the making of preparations before the killing for the purpose of concealing the crime, and calmness immediately after the killing. *See* State v. Nichols, ___S.W.3d___, ___ (Tenn. 2000); Bland, 958 S.W.2d at 660.

## C. Analysis

Viewing the evidence and the inferences therefrom in a light most favorable to the state, we conclude the evidence is sufficient to sustain the jury's finding of premeditation. Some of the circumstances enumerated by the Supreme Court in *Nichols* are present in the instant case.

Several witness testified the defendant threatened to kill his wife prior to her murder. Ray Lipford, the defendant's neighbor, testified that on at least two occasions the defendant threatened to kill his wife. He stated these altercations occurred about one month prior to her murder. Deborah Floyd, a family friend, testified that the couple fought about the dog. She testified that about one week prior to the murders, the defendant stated, "if the dog gets put to sleep, the whole damn family will be put to sleep." The evidence revealed that the dog was shot and killed by the defendant along with the two victims. Thomas Kiracofe, the defendant's former cellmate, testified the defendant told him the couple argued over the dog and he shot his wife. Kiracofe stated that the defendant claimed he then shot his stepdaughter because she had witnessed her mother's murder.

Testimonial evidence revealed the defendant possessed a .9mm handgun. Dewayne Scott testified that he loaned the defendant his .9mm Ruger handgun about six months prior to the murders, and both Smith and Lipford testified that they had seen the defendant in possession of the weapon less than a month before the murders. Additionally, Wanda Cobb testified that she observed the defendant aim an unloaded gun at the victim's head and pull the trigger. Testimony from crime scene investigators revealed that neither victim was armed, and there was no sign of forced entry into the mobile home or any sign of a struggle on the interior. Furthermore, analysis of the clothing worn by the defendant revealed the presence of gunpowder residue.

Finally, in addition to taking steps to destroy evidence of his crime, the defendant exhibited calmness immediately after the killing. He called his brother and told him that he was leaving for Louisiana to visit another brother, and asked him to check on his family the next day. Furthermore, he drove to a local gas station and obtained a receipt for cigarettes in order to establish a purported alibi. He then changed his clothes and called 911. The officers who arrived on the scene stated that once the defendant was placed in the patrol car, he fell asleep.

We conclude there was ample evidence to support defendant's convictions. This issue is without merit.

## IMPEACHMENT EVIDENCE

The defendant argues the trial court erred in sustaining the state's objection to the introduction of extrinsic evidence to impeach Thomas Kiracofe. He claims the proper foundation was laid under Tenn. R. Evid. 613 (b).

On cross-examination of Thomas Kirakofe, defense counsel asked the witness if he ever asked Steven Barker to "go with him and snitch," in order to get a "time cut". Kirakofe replied that he did not. To rebut Kiracofe's assertion, the defendant sought to introduce the testimony of Steven Barker. Barker's proffered testimony involved an alleged incident in which Kirakofe requested Barker "snitch" on another inmate so that Kirakofe could receive a reduction in his federal sentence. The state objected to this testimony, arguing Kirakofe had not been given ample opportunity to admit or deny making the statements. Therefore, the state argued the defense failed to lay a proper foundation for extrinsic impeachment evidence under Tenn. R. Evid. 613(b). The objection was sustained as to the specific statements regarding this incident, but the trial court stressed that defense counsel was free to inquire into Kiracofe's reputation for truth and veracity.

The trial court erred in disallowing Barker's testimony about Kiracofe's request that he aid him in obtaining a sentence reduction by "snitching" on a fellow inmate. The defendant laid a proper foundation for this inquiry, and Kiracofe had an opportunity to admit or deny the statement. Once Kiracofe denied asking Barker to corroborate his story so that he could receive a sentence reduction, the defendant should have been given an opportunity to introduce Barker's testimony to impeach Kiracofe. However, we find that this error is harmless.

Barker was allowed to testify that Kiracofe told him about sentence reductions based on cooperation with the prosecuting authorities. Barker was also allowed to testify about Kiracofe's reputation for truthfulness and responded by testifying that Kiracofe was a "liar" and a "lying snitch." In light of this testimony, the thorough cross-examination of Kiracofe and the overwhelming evidence of guilt, the error was harmless. *See* Tenn. R. App. P. 36(b).[1]

---

[1]This issue was addressed in the trial court and in the briefs in this court under Tenn. R. Evid. 613(b). The parties have not addressed the admissibility of this evidence under Tenn. R. Evid. 404(b) or 616. Likewise, we do not
(continued...)

## LIFE INSURANCE

The defendant contends the trial court erred in allowing the wife's mother to testify about two insurance polies in which the defendant had a financial stake. He argues that there was no evidence presented to demonstrate that he had knowledge of these policies. Thus, he claims this evidence did not relate to motive and, therefore, was irrelevant under Tenn. R. Evid. 401. In addition, he claims the prejudice resulting from the admission of this evidence outweighed any probative value it might have. *See* Tenn. R. Evid. 403.

Betty Smith testified that there was a credit life insurance policy on her daughter relating to the mobile home she and the defendant co-owned. In addition, she stated her daughter had a life insurance policy of $42,000 naming the defendant as primary beneficiary. However, on cross-examination she admitted she did not know whether or not the defendant was aware either policy existed, and stated the defendant had made no claim on either policy.

Tenn. R. Evid. 401 states that evidence is relevant if it "tends to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." The existence of life insurance can certainly be relevant to prove motive. *See* State v. Stephenson, 878 S.W.2d 530, 541 (Tenn. 1994). In Stephenson, however, there was proof the defendant knew about the policy and offered the amount of the policy as payment for killing the victim. *Id.* In the instant case the state failed to show the defendant was motivated by financial gain. In fact, this appears to be contrary to the state's theory that the defendant simply carried out his previous threats to kill his wife for reasons unrelated to money.

The testimony regarding the life insurance policies was brief. In light of the extensive evidence introduced against the defendant, we find this error to be harmless. *See* Tenn. R. App. P. 36(b).

## CRIME SCENE EVIDENCE

The defendant alleges the trial court abused its discretion by allowing the state's forensic pathologist, Dr. Smith, and T.B.I. Agent Romanek to describe crime scene photographs of the victims. He argues this evidence was cumulative and prejudicial. Furthermore, the defendant argues the trial court erred by allowing the jury to view the video of the crime scene.

### A. Description of Photographs

Although the photographs were not introduced, the defendant argues the descriptions of the photographs by Dr. Smith and Agent Romanek were irrelevant and just as prejudicial as the

---

[1](…continued)
address the admissibility of the evidence under these two rules. However, if the trial court erred in refusing to admit this evidence under these rules, we conclude the error would be harmless for the same reasons stated above.

photographs. The defendant asserts Dr. Smith was allowed to give his opinion about cause of death and the type of injuries suffered. Thus, he argues the descriptions of the blood splatters and gruesome details of the wounds were unnecessary and highly inflammatory. Additionally, the defendant claims Agent Romanek could have described the position of the bodies without further details about the "gruesome scene."

The admissibility of photographs lies within the sound discretion of the trial court whose ruling will not be overturned on appeal except upon a clear showing of an abuse of discretion. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978); State v. Lacy, 983 S.W.2d 686, 694 (Tenn. Crim. App. 1997). We conclude testimony describing crime scene photos should be analyzed under this same standard. Nevertheless, the testimony must be relevant to an issue at trial with its probative value outweighing any prejudicial effect that it may have upon the trier of fact. State v. Braden, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993). Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

The testimony about the photographs was necessary to corroborate the medical testimony and to give the jury a proper description of the crime scene. The description given by Dr. Smith was elicited in the context of corroboration for his medical conclusions. In addition, Agent Romanek gave only a brief description with regard to the location of the wife's body. Thus, we conclude the trial court did not abuse its discretion in allowing Dr. Smith and Agent Romanek to discuss the content of the photographs.

## B. Videotape

The defendant argues the videotape of the crime scene depicting the stepdaughter's body was particularly gruesome and inflammatory. The video was edited as to the wife, but did not exclude the stepdaughter. The defendant argues both victims should have been excluded. Additionally, he argues the video was needlessly cumulative. He contends the medical testimony and the testimony of crime scene investigators was sufficient to depict the injuries to the victims, placement of the bodies, and the condition of the crime scene.

At trial, a color videotape of the crime scene was shown to the jury. Upon defendant's objection, the court ordered all images of the wife be edited out of the video. However, the court found the images of the stepdaughter "were not so gruesome as to substantially outweigh their relevance." The video showed the exterior and interior of the mobile home, including images of her body as she was found by investigators.

The admissibility of a videotape of the crime scene is within the sound discretion of the trial court, and we will not overturn its ruling on the admissibility of this evidence without a clear showing of abuse of that discretion. State v. Hall, 976 S.W.2d 121, 151 (Tenn. 1998); State v. Bigbee, 885 S.W.2d 797, 807 (Tenn. 1994).

The defense claimed someone broke into his house and committed the murders. Therefore, the state argues the video was probative because it showed there was no sign of forced entry into the dwelling and no sign of a struggle within the dwelling. We agree that the video is relevant to the issues of identification and premeditation. In addition, the video aided the jury in understanding the testimony of medical examiners and crime scene investigators. Furthermore, the portion of the video depicting the stepdaughter was brief and was merely shown to document the position of the body in relation to the bullet path and the shell casings that were found at the scene. Furthermore, our review of the video does not reveal that it was inflammatory. Thus, we conclude the probative value of the video is not outweighed by its prejudicial effect. The trial court did not abuse its discretion in allowing the edited video to be shown to the jury.

## THREATS

The defendant contends the testimony of Ray Lipford and Debbie Floyd regarding threats allegedly made prior to the murders was irrelevant and should have been excluded. He argues the threats were conditional, and the state did not present evidence that the conditions were ever satisfied. Therefore, he claims the testimony was not relevant to prove motive or state of mind.

In State v. Smith, 868 S.W.2d 561 (Tenn. 1993), the Tennessee Supreme Court held that evidence of a defendant's prior acts of violence and threats against the victim is admissible under Tenn. R. Evid. 404(b) in a murder case because the prior bad acts are relevant to showing the defendant's hostility toward the victim, the settled purpose to harm the victim, and the intent and motive for the killing. *Id.* at 574. Declarations of an intent to kill are particularly relevant to establishing premeditation. State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998). Furthermore, evidence of a threat is relevant and admissible even though the threat is conditional in form. 1 **Wharton's Criminal Evidence** § 141 (14th ed. 1985).

> It is immaterial whether the condition is in such form that the victim can avoid the threatened harm by refraining from doing a specified act, or that the victim must do a specified act in order to avoid the harm. Thus, a conditional threat is admissible without regard to whether the victim did or did not do the act specified in the condition.

*Id.*

Like the analysis required under Tenn. R. Evid. 403, the trial court must weigh, under Rule 404(b)(3), the probative value of the evidence against the danger of unfair prejudice. However, the test for making such a determination is more stringent under Rule 404 than under Rule 403. State v. DuBose, 953 S.W.2d 649, 654 (Tenn. 1997). Nevertheless, a trial court's determination pursuant to Rule 404(b) will not be overturned on appeal absent an abuse of discretion. State v. Vann, 976 S.W.2d 93, 102 (Tenn. 1998).

**A. Ray Lipford**

Ray Lipford, the defendant's neighbor, testified that on two different occasions he heard the defendant warn the victim that if she ever tried to leave him, he would kill her. He stated the incidents happened approximately three months prior to the murders. The trial court held the evidence was relevant to motive and the defendant's state of mind.

The issue of motive and the defendant's state of mind were critical to proving premeditation, a required element of the charged offense. We conclude the trial court did not abuse its discretion in allowing this testimony.

## B. Debbie Floyd

Debbie Floyd, a friend of the wife, testified that the defendant stated that, "if the dog gets put to sleep, the whole damn family gets put to sleep." Again, the trial court allowed the evidence as proof of motive and to demonstrate the defendant's state of mind.

The defendant argues this is a conditional statement, and there is no evidence the condition was fulfilled. The evidence revealed the dog was killed by the defendant along with the two victims. Thus, the statement by the defendant that the family would be put to sleep if the dog was put to sleep has direct correlation to the murders. Therefore, we conclude the trial court did not abuse its discretion in allowing the jury to hear this testimony.

## REMOTENESS OF PRIOR CONFRONTATION

The defendant asserts the trial court erred in allowing Wanda Cobb to testify about an incident she witnessed one year prior to the murder. He argues the incident was so removed in temporal proximity to the murders as to make any relevance it might have with regard to motive or intent too remote; thus, its prejudicial effect outweighed its probative value.

Wanda Cobb cared for the stepdaughter when the couple was out of town or at work. At trial, she testified that approximately one year prior to the murders, she witnessed the defendant and victim in a drunken argument. She stated the defendant pointed an unloaded gun at his wife's head and pulled the trigger several times. The trial court found this evidence was relevant and further found the probative value of the evidence was not outweighed by the danger of unfair prejudice.

Although evidence may appear to be relevant, it may relate to a time so remote from the date of the alleged crime that it ceases to have probative value. 1 **Wharton's Criminal Evidence** § 92 (14th ed. 1985). No rigid rule can be stated to determine when the time interval is so great that a given fact has no probative value. *Id.* However, objections to remoteness are ordinarily regarded as affecting the weight and not the admissibility of the evidence. Smith, 868 S.W.2d at 575; *see also* 41 C.J.S. **Homicide** § 204(d) (1991).

The incident occurred approximately one year before the murders. However, "threats, even though remote, are competent when it appears that they were repeated from time to time, or the hostility continued, until shortly before the commission of the offense alleged." 41 C.J.S. **Homicide**

§ 204(d) (1991). Here, two other witnesses testified they heard the defendant threaten to kill his wife shortly before the murder. Lipford testified the defendant threatened the victim one month prior to the murders, and Floyd testified that she heard the defendant threaten the victim the week before the murders. Therefore, we conclude the trial court did not abuse its discretion by allowing Cobb's testimony.

## FAILURE TO FLEE

The defendant argues he should have been allowed to rebut Thomas Kiracofe's testimony that he and defendant intended to escape. He claims the state attempted to introduce evidence that he had a "consciousness of guilt," and he should have been allowed to challenge that assertion.

At trial, the defendant sought to introduce testimony from Agent McLean of the T.B.I. that the defendant was not arrested until approximately two months after the murders, and that he voluntarily surrendered. He claimed this testimony negated Kirakofe's assertion that he intended to escape. The state objected and the trial court held that the defendant could establish that he was cooperative and that he did not flee the jurisdiction. However, the trial court held that the length of time between the event and arrest was irrelevant and, therefore, disallowed testimony regarding the actual date of defendant's arrest.

We conclude that the failure of the defendant to flee for the two months prior to his arrest was relevant in light of the state's evidence. However, the defendant was given ample opportunity to establish that he was cooperative during the investigation, and that he did not attempt to flee the jurisdiction prior to his arrest. The fact that the jury was unaware that the actual time between the crime and defendant's arrest was two months did not prejudice the defendant. We, therefore, conclude the error was harmless. *See* Tenn. R. App. P. 36(b).

## CONCLUSION

In summary, we conclude:

   (1)   the evidence was sufficient to sustain the defendant's convictions for premeditated murder;
   (2)   the trial court's error in disallowing the defendant to present impeachment evidence against a state witness was harmless;
   (3)   the trial court's error in admitting evidence pertaining to life insurance policies was harmless;
   (4)   the crime scene evidence was properly admitted;
   (5)   the evidence of alleged threats made by the defendant against his wife was properly admitted;
   (6)   the evidence of a prior violent argument between the defendant and his wife was properly admitted; and
   (7)   the trial court did not commit reversible error by limiting the defendant's testimony regarding the date of his arrest.

Thus, we AFFIRM the defendant's convictions for premeditated first degree murder.


_____

**JOE G. RILEY, JUDGE**