IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 9, 2002 Session

## STATE OF TENNESSEE v. KENITH A. NATHANIEL A/K/A KENNETH ARNOLD PHILLIPS A/K/A KENNY DENT

**Appeal from the Circuit Court for Tipton County**
**No. 3997     Joseph H. Walker, Judge**

---

**No. W2001-01831-CCA-R3-CD  - Filed June 19, 2002**

---

The Defendant was convicted by a Tipton County jury of theft of property valued over $1000, a Class D felony.  After a sentencing hearing, he was sentenced as a Range II multiple offender to five years in the Department of Correction.  On appeal, the Defendant contends that (1) the evidence is insufficient to support the jury's verdict, (2) the trial court erred in admitting evidence of a prior bad act, (3) the Defendant was identified from an impermissibly suggestive lineup, and (4) the Defendant was never informed of the existence of a possibly exculpatory videotape.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Ryan Brown, Covington, Tennessee, for the appellant, Kenith A. Nathaniel a/k/a Kenneth Arnold Phillips a/k/a Kenny Dent.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Elizabeth Rice, District Attorney General; and Gary Antrician, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On December 24, 1999, Deborah King, the victim, and her husband Gregory King stopped at the KFC/Taco Bell restaurant in Atoka, Tennessee.  Ms. King sat down in a booth to eat but moved to a second booth because the sun was shining directly into her eyes.  When the victim moved to the second booth, she inadvertently left her purse behind.  The purse contained the victim's driver's license, a checkbook which contained checks numbered 2069 through 2100, a library card, a cell phone, approximately $100, and a wedding ring valued at $4,500.  The driver's license was issued to the victim under her maiden name of "Deborah Hayes."  Approximately twenty minutes

later, as the Kings prepared to leave, the victim noticed that her purse was missing and immediately returned to the first booth. The purse was no longer in the first booth. The victim informed the managers of the restaurant that her purse was missing, and a search ensued. The purse was never recovered.

The victim testified at trial that the Defendant, an employee of the restaurant, was the only person in the area during the time the Kings were in the restaurant. The victim stated that the Defendant was emptying the trash can next to the first booth while the Kings were eating. Chad Stapleton and Tara Hodge Stapleton, managers of the restaurant, testified that the Defendant was in the dining area of the restaurant on December 24, despite repeatedly being told to return to the kitchen and cook chicken. Both managers also stated that they observed the Defendant carry several "broken down" boxes and one intact box out to the waiting car of his girlfriend shortly before the victim reported her purse missing. Ms. Stapleton testified that, when the victim reported the purse missing, the Defendant became very nervous.

Kenneth Hamner, another restaurant employee, testified that he overheard the Defendant call his girlfriend shortly before the purse was reported missing and tell her to "get to the restaurant as soon as she could." Mr. Hamner also observed the Defendant carry boxes to his girlfriend's car.

Charles Bomar, an employee of J & N Cherry's Amoco in Memphis, Tennessee testified that at approximately 7:00 on the evening of February 28, 2000, the Defendant entered his store and used a check numbered 2077 from the victim's checking account to pay for several purchases. Mr. Bomar informed the Defendant that he needed identification in order to accept the check, and the Defendant retrieved the driver's license of Deborah Hayes from his car to show Mr. Bomar. Mr. Bomar testified that he remembered the Defendant because he returned later to exchange some cigarettes he purchased for a cheaper brand and allowed Mr. Bomar to keep the two or three dollar price difference as a tip. Mr. Bomar later identified the Defendant in a photographic lineup.

Melba Wood, the Defendant's former girlfriend, testified that the Defendant gave her several boxes from the restaurant on December 24, 1999, to wrap Christmas presents in, but the victim's purse was not in any of the boxes. The Defendant also testified at trial and denied taking the purse or using the victim's check to purchase anything.

**SUFFICIENCY**

The Defendant first contends that the evidence is insufficient to support the jury's verdict. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient.

See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

One commits theft when one "knowingly obtains or exercises control over the property" of another with the intent to deprive the owner of the property. Tenn. Code Ann. § 39-14-103. Theft is a Class D felony when the value of the property obtained is more than $1,000 but less than $10,000. See Tenn. Code Ann. § 39-14-105(3).

The Defendant was the only person in the area surrounding the purse before it was determined to be missing. Several employees observed the Defendant carrying boxes out to his girlfriend's car shortly before the purse was reported missing. Ms. Stapleton testified that the Defendant acted very nervous once the purse was reported missing. Furthermore, Mr. Bomar identified the Defendant as the man who bought cigarettes in his store using one of the checks and the driver's license contained within the stolen purse. The victim testified that the contents of the purse were valued at approximately $4,500.

Circumstantial evidence alone is sufficient only when the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone." State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). However, the standard for appellate review is the same whether the conviction is based upon direct or circumstantial evidence. See State v. Vann, 976 S.W.2d 93, 111 (Tenn. 1998). Accordingly, affording the State "the strongest legitimate view of the evidence," we conclude that the evidence is sufficient to support the jury's verdict. Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. This issue is without merit.

### PRIOR BAD ACTS OF THE DEFENDANT

Next, the Defendant contends that the trial court erred in admitting the testimony of Charles Bomar. Mr. Bomar testified that the Defendant payed him for cigarettes and other items using a check stolen from the victim's purse. The Defendant contends that Mr. Bomar's testimony was admitted in violation of Tennessee Rule of Evidence 404(b) which states that

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may,

however be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Initially, we note that the Defendant did not object to Mr. Bomar's testimony at trial. No request was made for a hearing outside the presence of the jury or for the trial court to determine the existence of a material issue. Additionally, the evidence was not offered to prove the Defendant's character, but, rather, to prove that the Defendant exercised control over the victim's stolen property. Accordingly, we conclude that the probative value of Mr. Bomar's testimony outweighed any possibility of unfair prejudice. This issue is without merit.

### SUGGESTIVE LINEUP

The Defendant also contends that his due process rights were violated because the photographic lineup shown to Mr. Bomar by police was impermissibly suggestive. In order to show a due process violation arising out of an impermissibly suggestive lineup, the Defendant must show that the lineup presented to Mr. Bomar was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." See Forbes v. State, 559 S.W.2d 318, 322 (Tenn. 1977), quoting Simmons v. United States, 390 U.S. 377, 384 (1968). Again, this Court notes that this issue was not raised at trial, and, while it was raised in the Motion for New Trial, the Defendant has not provided a transcript of the hearing on the Motion for New Trial. The order denying the motion makes no reference to this issue.

The Defendant argues that the photographic lineup was impermissibly suggestive because he was the only subject wearing an orange prison uniform. However, after a review of the photographic lineup, we conclude that the lineup is not so impermissibly suggestive as to create a substantial likelihood of misidentification. The photograph of the Defendant is cropped in such a way as to allow the viewer to see only the collar of his shirt. While the Defendant's shirt is orange, nothing in the photograph suggests that the shirt is a prisoner's uniform. It appears as though the Defendant is wearing a plain orange t-shirt. We cannot say that the photograph of the Defendant is impermissibly suggestive.

The issue presented is somewhat unique because Mr. Bomar did not identify the Defendant as the perpetrator of theft of the victim's purse in Tipton county. Mr. Bomar identified the Defendant as possessing or exercising control over the contents of the victim's purse in Shelby County, a crime itself, but one for which he was not indicted. The testimony is crucial because it places the Defendant in possession of property taken in the theft in Tipton County. We conclude that, even

when considered under the standard prescribed in Neil v. Biggers, 409 U.S. 188 (1972), Mr. Bomar's identification is admissible.

Even if the lineup was impermissibly suggestive, the totality of the circumstances surrounding the identification support the admission of Mr. Bomar's identification of the Defendant. The Supreme Court in Neil v. Biggers, 409 U.S. 188, 199 (1972), set forth five factors to consider in determining whether an identification is admissible after an impermissibly suggestive lineup. Those factors are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' description; (4) the witness' level of certainty; and (5) the time between the crime and the confrontation. See id.; Forbes, 559 S.W.2d at 323.

Mr. Bomar testified at trial that he viewed the Defendant on three different occasions during their encounter: the initial encounter, when the Defendant returned after retrieving the victim's driver's license, and when the Defendant exchanged the cigarettes for another brand. Mr. Bomar stated that he remembered the Defendant because the Defendant gave him a two to three dollar tip, and that he was absolutely sure that the Defendant was the man who paid him with the victim's stolen check. Mr. Bomar adamantly stated that his in-court identification of the Defendant was based upon his encounter with the Defendant at the Amoco. Accordingly, we conclude that the trial court did not err in allowing Mr. Bomar to identify the Defendant as the man who used the victim's stolen check. This issue is without merit.

## ALLEGEDLY EXCULPATORY EVIDENCE

Finally, the Defendant alleges that the prosecution failed to "preserve and make available" a videotape of the transaction involving the victim's stolen check at the Amoco station. The State has a duty to furnish the accused with any exculpatory evidence that pertains to the guilt or innocence of the accused or the punishment which may be imposed upon conviction. See Brady v. Maryland, 373 U.S. 83, 87 (1963); State v. Spurlock, 874 S.W.2d 602, 609 (Tenn. Crim. App. 1993). The violation of this duty denies the accused due process. See Brady, 373 U.S. at 87; Spurlock, 874 S.W.2d at 609. The Defendant must prove that the State violated his right to due process by a preponderance of the evidence. See id. at 610. The Defendant must show that the evidence in question (1) is material, (2) is favorable to the Defendant, his defense, or the sentence that will be imposed if convicted, (3) was suppressed by the prosecution, and (4) was properly requested by the Defendant, unless the evidence is obviously exculpatory in nature. See id. at 609.

Mr. Bomar testified on cross-examination that the Amoco store in which the Defendant passed the victim's stolen check routinely videotapes transactions for surveillance and security purposes. The Defendant alleged in his Motion for New Trial and now on appeal that the State denied him due process by not making the tape available to the Defendant. There is no other mention in the record of the videotape. Accordingly, we conclude that the Defendant has failed to prove by a preponderance of the evidence that the tape was material, favorable to his defense, or suppressed by the prosecution. This issue is without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is AFFIRMED.

_____
DAVID H. WELLES, JUDGE