IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 10, 2006 Session

## STATE OF TENNESSEE v. BRANDON GOODS

**Appeal from the Criminal Court for Shelby County**
**No. 03-05332     W. Fred Axley, Judge**

_____

**No. W2005-00481-CCA-R3-CD  - Filed May 18, 2006**

_____

The Appellant, Brandon Goods, was convicted by a Shelby County jury of first degree premeditated murder and especially aggravated robbery, resulting in concurrent sentences of life imprisonment and twenty years.  On appeal, Goods raises the following issues for our review: (1) whether the trial court abused its discretion by admitting into evidence certain photographs of the deceased; and (2) whether the trial court's response to a jury question during deliberations constituted reversible error. After a review of the record, the judgment of the Shelby County Criminal Court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Robert Wilson Jones, Chief Public Defender, Memphis, Tennessee (at trial); Robert C. Brooks, Memphis, Tennessee (on appeal), for the Appellant, Brandon Goods.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Glen Baity and John Tibbetts, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On November 18, 2002, Lawrence Cavett "crack pawned" his 1999 Jeep Cherokee to an individual he knew as "Little Rod" or "Black."  At trial, Cavett explained that the street term "crack pawn" means that a vehicle is loaned to a drug dealer in exchange for crack cocaine.  On this occasion, Cavett loaned his Jeep to "Little Rod" for two hours in exchange for one rock of crack cocaine.  The Jeep, however, was not returned to Cavett as agreed.  Two days later, Cavett observed "Little Rod" or "Black" driving his Jeep but was unable to retrieve his vehicle at that time.

About three days after "crack pawning" his Jeep, Cavett received a phone call from an unidentified person who stated that his vehicle was "way out in the county" and that there were "two guys fixing to burn it up." Cavett drove to the location described and found that his Jeep was already burned. Cavett also observed what appeared to be blood inside the Jeep. After contacting the police, Cavett explained that he had given the vehicle to a person he knew as "Black." After providing the police with further information, Cavett identified Rodrequez Debose from police photographs as the person he knew as "Little Rod" or "Black." The police informed Cavett that his vehicle had been used in a homicide.

On November 19, 2002, around 5:30, Memphis Police Officer Cheryl Wilkins responded to a radio dispatch that a deceased person had been discovered at the 3400 block of Parker in Memphis. Wilkins observed the victim, Carlos Hobson, lying on the sidewalk in front of 3408 Parker. Officer Aaron Merritt of the Felony Response Unit also responded to the scene. Near the victim's body, he recovered beeper parts, bullet fragments, and a rocklike substance that was later identified as cocaine.

Sergeant Deborah Kelly of the Crime Response Unit was assigned to investigate the use of the 1999 Jeep Cherokee in the homicide of the victim. Examination of the vehicle revealed the appearance of blood stains inside the vehicle. Three spent rounds and three nine millimeter casings were also recovered at the scene. Dr. Qadriyyah Debnam of the serology DNA unit of the Tennessee Bureau of Investigation testified that a blood sample was taken from the rear seat of the Jeep and, when compared to a blood sample from the victim, the two samples matched.

Rodrequez Debose was interviewed by the police and denied any involvement in the homicide of Carlos Hobson. He admitted that he had sold cocaine on occasion in the past and that he had delivered cocaine to a person named "Lawrence" in exchange for the use of Lawrence's Jeep Cherokee. Debose stated that he in turn loaned the Jeep to the Appellant, whom he knew as "Mookie Bear." Debose further stated that he later heard that someone was killed in the Jeep but that he was neither involved nor knew the victim.

The Appellant was interviewed on April 18, 2003, by homicide investigators. The Appellant advised the police that he and Debose had planned to rob the victim, who they knew to be a drug dealer. The Appellant stated that with Debose as his passenger, he drove Cavett's Jeep to the victim's home, and the victim got in the backseat and handed the Appellant some crack cocaine. Debose directed the Appellant to stop the vehicle, and Debose threw the victim out the backseat passenger door. At that point, the Appellant stated that Debose shot the victim multiple times, and the Appellant sped off. The Appellant stated that after returning to his house, he "gave [Debose] two empty jugs for gas to go burn the truck." The Appellant stated that he stayed at home while Debose drove the vehicle to the location where it was burned.

Following up on this information, investigators developed serious doubts as to Debose's involvement in the homicide. The police returned to the Appellant who gave a second statement on April 22, 2003, at which time he asserted that his original statement was not accurate. This time, the

Appellant essentially reiterated the same events but identified Melvin Green or "Mellow" as the shooter, instead of Dubose. He also added that he drove the vehicle home after the shooting and that he and Green planned to drive the Jeep to another location and burn it, but the Jeep got stuck in the mud. The Appellant stated that four days later he drove the vehicle to an open field but fled the scene without burning it. Investigators located Melvin Green and questioned him about the incident but were unable to connect Green to the crime beyond the Appellant's statement of Green's involvement. Based upon their investigation, the police concluded that the Appellant was solely responsible for the homicide of the victim.

An indictment was returned by a Shelby County grand jury charging the Appellant with first degree premeditated murder, first degree felony murder, and especially aggravated robbery. The Appellant's trial commenced on December 7, 2004, with the jury returning guilty verdicts on all three counts as indicted. A motion for new trial was filed on February 4, 2005, which was denied. Notice of appeal was filed on February 16, 2005.

## Analysis

### I. Introduction of Photographs

The Appellant argues that the trial court violated the Tennessee Rules of Evidence by permitting the introduction of two photographs at trial. He argues that the photographs (Exhibits 7 and 21) are more prejudicial than probative. Tennessee courts follow a policy of liberality in the admission of photographs in both civil and criminal cases. *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978) (citations omitted). Accordingly, "the admissibility of photographs lies with the discretion of the trial court" whose ruling "will not be overturned on appeal except upon a clear showing of an abuse of discretion." *State v. Faulkner*, 154 S.W.3d 48, 67 (Tenn. 2005) (*quoting Banks*, 564 S.W.2d at 949). However, before a photograph may be entered into evidence, it must be relevant to an issue that the jury must decide, and the probative value of the photograph must outweigh any prejudicial effect that it may have upon the trier of fact. *State v. Vann*, 976 S.W.2d 93, 102 (Tenn. 1998), *cert. denied*, 526 U.S. 1071, 119 S. Ct. 1467 (1999); *State v. Braden*, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993), *perm. to appeal denied*, (Tenn. 1993) (citation omitted); *see also* Tenn. R. Evid. 401, 403.

The two challenged photographic exhibits depict the victim's partially clad body as it was found on the sidewalk at 3408 Parker. The photographs, neither of which are close up, reveal the upper torso of the victim's body. The view, as depicted in Exhibit 7, reveals the left side and face of the victim. The photograph in Exhibit 21 reveals the right side of the victim's body and shows the presence of multiple gunshot wounds. The Appellant contends that the photographs were unduly prejudicial due to their "gruesome" nature. He argues that the introduction of these photographs was unnecessary due to the detailed testimony of the medical examiner.

The State argues that both photographs are relevant to establish premeditation. Moreover, as argued by the State, the photographs are relevant in corroborating the Appellant's statement that

the victim was shot numerous times in the backseat of the vehicle and then thrown from the vehicle before it was burned.

The Appellant in this case was charged with first degree premeditated murder. The challenged exhibits, which demonstrate multiple gunshot wounds, are relevant to establishing premeditation in this first degree murder case. *See Faulkner*, 154 S.W.3d at 69. In holding that photographs were admissible for this reason, our supreme court has held, "[t]he primary effect of seeing the photographs is not so much to inflame the viewer as to reveal to the viewer that, whoever inflicted the injuries upon the victim did so deliberately and premeditatively, striking the victim multiple times." *Id.* at 70. We agree with the State that each of the exhibits was relevant and, thus, admissible for these purposes. Moreover, we would note that while the photographs are not necessarily pleasant to view, we agree with the State that they are not particularly gruesome to the extent that they would serve to inflame the jury. Accordingly, we conclude that their admission into evidence was not error.

## II. Jury Question During Deliberations

Next, the Appellant asserts that the trial court erred in its response to a jury question during jury deliberations. At the close of proof, the trial court properly instructed the jury as to all relevant issues of the case, including criminal responsibility and criminal responsibility for facilitation of a felony.[1] During jury deliberations, the jury submitted the following question to the court: "Can you charge someone with first degree murder based upon criminal responsibility?" To this question, the trial court responded, "And the answer is, yes. And, then, I will add to that, 'Please re-read the instructions on Criminal Responsibility for the Facilitation of a Felony.'" The Appellant argues that the trial court responded improperly to the jury's question by referring the jury to criminal responsibility for the facilitation of a felony instead of simply criminal responsibility. Furthermore, he argues that the error was prejudicial because it "could have influenced the decision of the jury."

Before addressing the merits of the Appellant's contention, we note that the record reflects that the Appellant failed to make a contemporary objection to the trial court's supplemental jury instruction regarding criminal liability for the conduct of another. Furthermore, this issue was not raised in the motion for new trial. Accordingly, this issue has been waived. *See State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988); Tenn. R. App. P. 36(a); Tenn. R. App. P. 3(e).

Because this issue is waived, it is reviewable only under the discretionary authority of plain error. *See* Tenn. R. Crim. P. 52(b). Rule 52(b) provides "[a]n error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." This court is permitted to correct an error not raised before the trial court

---

[1] Although the indictment charged only the Appellant with the victim's death, we presume, based upon the Appellant's statements that he planned the robbery but another person shot the victim, that the trial court instructed the jury on criminal responsibility for the conduct of another and criminal responsibility for facilitation of a felony.

only when: (1) the lower record is clear; (2) a clear rule of law has been breached; (3) a substantial right has been affected; (4) the waiver was non-tactical; and (5) consideration of the error is necessary to do substantial justice. *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (adopting the test articulated by this court in *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)). The asserted "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642.

As previously noted, the trial court properly instructed the jury as to the indicted offenses and on all relevant lesser included offenses. Moreover, the jury was in possession of these written instructions during deliberations in the jury room. Although the trial court did not directly respond to the jury's question regarding criminal responsibility, we are unable to conclude that the trial judge's inadvertent reference to the facilitation of a felony instead of criminal responsibility is "of such a great magnitude that it probably changed the outcome of the trial." *See Id.* Accordingly, we deny harmless error review of this issue.

## CONCLUSION

Based upon the foregoing, we affirm the Appellant's convictions for first degree murder and especially aggravated robbery.

_____
DAVID G. HAYES, JUDGE